(No. 47708.

WILLIAM L. SMITH *et al.,* Appellees, v. D.R.G., INC., *et al.,* Appellants.

*Opinion filed March 18, 1976.*

Allan L. Blair, of Chicago, for appellants.

William Cousins, Jr., of Chicago, for appellees.

MR. CHIEF JUSTICE WARD delivered the opinion of the court:

The plaintiffs, William L. Smith and Betty Smith, his wife, filed a petition in the circuit court of Cook County under section 72 of the Illinois Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) on June 14, 1972, asking the court to set aside its order of April 17, 1972, which directed the clerk of Cook County to issue a tax deed to the defendant, D.R.G., Inc. The court denied the petition on July 6, 1972, finding that the defendant "committed no fraud in the procurement of the tax deed order." The appellate court reversed (30 Ill. App. 3d 162), and we granted the defendant's petition for leave to appeal.

The parcel of land involved is located in the city of Chicago and is improved with a single-family brick residence with an attached garage. The plaintiffs were the recorded owners of the property and occupied the house. In May of 1969, the collector of Cook County filed an application for judgment and order of sale of the property because of unpaid special assessments totaling $143.04. On May 27, 1969, D.R.G. purchased the land at the sale for taxes and subsequently extended the period of redemption

to December 27, 1971. Ill. Rev. Stat. 1969, ch. 120, par. 744.

There was no redemption, and on January 6, 1972, D.R.G. applied for a tax deed. At an *ex parte* hearing on January 19, 1972, Juan Huey, a professional process server, testifying for the defendant, stated that he went to the Smith residence on the evening of September 13, 1971. He said that Mrs. Smith answered the door and that he presented her with a copy of the notice of the application for a tax deed as required by section 263 of the Revenue Act (Ill. Rev. Stat. 1969, ch. 120, par. 744), and he testified he told her it concerned a delinquency in the special assessment. He inquired if Mr. Smith was home, and Mrs. Smith responded that he was in the bathroom. He testified that he gave Mrs. Smith a second copy of the notice and that she went back into the house and handed the notice to Mr. Smith. Mr. Huey said that he was certain Mr. Smith received the notice at that time because he, Mr. Smith, emerged from the bathroom and came "to where I could see him through the door, and I asked her [Mrs. Smith] if she would hand it to him or if I could hand it to him, and she took it back to him and he looked at it." The trial court on April 17, 1972, ordered the issuance of a tax deed and in doing so found that all notices required by law had been given, that all provisions of the Revenue Act had been complied with and that no redemption had been made.

On June 14, 1972, the plaintiffs filed the petition under section 72. It alleged that the tax deed had been fraudulently procured in that Huey had filed a false affidavit stating he had personally served William Smith; that Huey falsely testified he handed the notice to Betty Smith and that she in turn handed it to her husband; that William Smith was not home when Huey came to the house and, therefore, that the tax deed was void because the defendant had failed to comply with the notice requirements of section 263. After a hearing the trial court

found that the plaintiffs had known of the sale for taxes and had on two separate occasions prior to December 27, 1971, obtained estimates of redemption; that the plaintiffs had failed to show grounds entitling them to relief under section 72; that the defendant committed no fraud in procuring the tax deed; that William Smith was not personally served on September 13, 1971, but that he did receive a copy of the notice of the application for a tax deed on that date from his wife. The appellate court reversed, holding that the trial court did not have jurisdiction over William Smith because he was not personally served with the notice, and that the failure to serve a party entitled to notice under section 263 required the reversal of the order issuing the tax deed. 30 Ill. App. 3d 162.

First, there was error by the appellate court in holding that the trial court did not have jurisdiction because, according to the appellate court, William Smith was not served with notice. The trial court did have jurisdiction to order the issuance of a tax deed, for it is clear that a tax sale proceeding is *in rem* and not *in personam* and that the court acquires jurisdiction over the land when the county collector makes his application for judgment and order for sale. (*First Lien Co. v. Markle,* 31 Ill.2d 431, 436; *Urban v. Lois, Inc.,* 29 Ill.2d 542, 546; *Shapiro v. Hruby,* 21 Ill.2d 353, 358; *Cherin v. R. & C. Co.,* 11 Ill.2d 447, 454.) And this court has held: "Once acquired the county court retains jurisdiction to make all necessary findings and enter all necessary orders supplemental to the original tax sale." (*Urban v. Lois, Inc.,* 29 Ill.2d 542, 546; see also *Nix v. Smith,* 32 Ill.2d 465.) Thus, the trial court had jurisdiction and, consequently, authority to find that all notices required had been given and to direct that a tax deed issue. (*Urban v. Lois,Inc.,* 29 Ill.2d 542, 546; *Shapiro v. Hruby,* 21 Ill.2d 353, 358; *Cherin v. R. & C. Co.,* 11 Ill.2d 447, 454-55.) The determination of whether a party has been given the notice required under section 263 goes to

whether the court should order the tax deed to issue and not to whether the court has jurisdiction in the proceeding. (See generally *Dahlke v. Hawthorne, Lane & Co.,* 36 Ill.2d 241; *Zeve v. Levy,* 37 Ill.2d 404.) A court should not direct the county clerk to issue a tax deed until it is satisfied that the requirements of the Revenue Act have been met. Ill. Rev. Stat. 1971, ch. 120, pars. 744, 747; *cf. Young v. Madden,* 20 Ill.2d 506.

If the court finds that the required notices have been given, that can be challenged only through a direct appeal or by a proceeding brought under section 72. (*Urban v. Lois, Inc.,* 29 Ill.2d 542, 546-47.) Section 266 of the Revenue Act (Ill. Rev. Stat. 1971, ch. 120, par. 747) provides that the tax deeds issued under the Act shall be incontestable except through direct appeal and states that section 266 should be liberally construed so that tax deeds convey merchantable title. Relief from an order that a tax deed issue can be obtained under section 72 only if the deed was procured by fraud. This court has held that "in a tax-deed proceeding section 72 of the Civil Practice Act may not, in the absence of fraud, be used to again put in issue questions previously passed upon by the trial court [citations], such prior determinations being conclusive upon all parties and immune from collateral attack. [Citations.]" *Dahlke v. Hawthorne, Lane & Co.,* 36 Ill.2d 241, 244; see also *Exline v. Weldon,* 57 Ill.2d 105, 110; *Zeve v. Levy,* 37 Ill.2d 404, 409; *Urban v. Lois, Inc.,* 29 Ill.2d 542, 548.

The plaintiff did not take a direct appeal from the trial court's order that a tax deed issue but filed a petition under section 72. As we have shown, the only question the petition could raise was whether the tax deed had been procured by fraud; in the absence of fraud, questions passed on by the trial court, such as service of notice, were not subject to collateral challenge under section 72.

The petitioner in a section 72 proceeding has the burden of proving that the tax deed was procured by

fraud. (*Exline v. Weldon,* 57 Ill.2d 105, 110; *People ex rel. Wright v. Doe,* 26 Ill.2d 446, 451; see also *Zeve v. Levy,* 37 Ill.2d 404; *Dahlke v. Hawthorne, Lane & Co.,* 36 Ill.2d 241.) To meet this burden the plaintiffs here had to show fraud: "a wrongful intent—an act calculated to deceive." (*Exline v. Weldon,* 57 Ill.2d 105, 110; *Dahlke v. Hawthorne, Lane & Co.,* 36 Ill.2d 241, 245.) This the plaintiffs did not do, and the trial court properly denied the section 72 petition. The plaintiffs say Juan Huey was not telling the truth when he stated that he handed the notice to Mrs. Smith, who in turn handed it to her husband. However, the credibility of witnesses was a question for the trial court that heard the testimony. The court's finding that all the required notices had been given by the defendant shows that the court accepted Huey's testimony. Too, the trial court's conclusion after the hearing on the petition that there had been no fraud in the procurement of the tax deed order indicates an acceptance of his testimony. The plaintiffs also argue that Huey and the attorney for D.R.G. filed false affidavits stating that they had personally served Mr. and Mrs. Smith. As to the attorney's affidavit, we consider that when it is viewed with the other documents filed by D.R.G. on January 19, 1972, it can only be read as declaring that the attorney is stating that Huey personally served the Smiths. Also, the trial court could reasonably have decided that there were no false statements in Huey's affidavit. Under the circumstances, Huey could have reasonably considered that he personally served Mr. and Mrs. Smith when he handed the notice to Mrs. Smith, who then handed it to her husband. One must conclude, as did the trial court, that the plaintiffs did not show there was fraud in the procurement of the tax deed.

This court in *Urban v. Lois, Inc.,* 29 Ill.2d 542, considered issues with substantial resemblance to the ones here. There the Joneses, owners of two parcels of property that had been sold for taxes, attempted to obtain a loan from Urban to allow them to redeem the parcels. In return

for the loan Urban was given a mortgage on the two parcels, which mortgage was registered with the Registrar of Titles seven months before the redemption period was to expire. Thereafter Urban had discussions with Interstate Bond Company, the holder of the tax certificates, but he did not redeem the properties. Neither did the Joneses, and subsequently tax deeds were issued. Urban then filed a petition under section 72 alleging that the tax deeds had been procured by fraud in that he had not been personally served with notice of the application for tax deeds as required by section 263 of the Revenue Act. The trial court specifically found that there had been no fraud committed in the procurement of the tax deeds, but it set the deeds aside on the ground that Urban had not been personally served.

In reversing the trial court, this court said:

"In the present case, Urban's amended petition alleged that the testimony upon the hearing for the issuance of the tax deeds in question was fraudulent. After a full hearing, however, the trial court specifically found that no fraud had been committed by respondent in the procurement of the tax deeds or at any other time in the tax-deed proceedings. This finding is not disputed by Urban, and we believe it is supported by the record. An affidavit was filed in the proceeding for the issuance of tax deeds purporting to show the persons interested in the premises and service thereon. While it is now apparent that Urban had an interest and was not served, there is no indication that the affidavit and the testimony based upon it was not in good faith. It is also clear that Urban knew of the tax sales and the time for redemption and that respondent's predecessor gave Urban every opportunity to redeem the property. ***

Since no fraud has been shown, we are faced

with the question of whether the trial court's prior finding 'all notice required by law has been given,' can be attacked by a section 72 petition on the ground of error.

It has been well established in tax-deed proceedings that section 72 cannot be used as a vehicle to relitigate any issue already passed on by the trial court, in the absence of fraud. [Citations.] As we stated in *Allen v. Nettleton,* 6 Ill.2d 141, 147: 'While section 263 of the Revenue Act regarding the giving of notices must be complied with, a finding that such notices were duly given cannot be disputed in a collateral proceeding.'

Such a conclusion is necessary to give effect to the 1951 amendments to the Revenue Act which provided that 'Tax deeds issued pursuant to this section shall be incontestable except by appeal from the order of the County Court directing the County Clerk to issue the tax deed.' Ill.Rev. Stat. 1961, chap. 120, par. 747.

\* \* \*

If we were to hold otherwise, we would abrogate the efficacy of the 1951 amendments to the Revenue Act, and would defeat the desired conclusiveness of the county court's order for the issuance of a tax deed. The consequent effect upon the merchantability of tax titles would place the annual tax sale in the same status as existed before the 1951 amendments and which the legislature intended to change. See *Cherin v. The R. & C. Company,* 11 Ill.2d 447, and *Shuck v. Guarantee Bank and Trust Co.,* 26 Ill.2d 123." *Urban v. Lois, Inc.,* 29 Ill.2d 542, 547-49.

The forced sale of a home is a grave and melancholy event, but the legislature has had to provide for it. It is clear the plaintiffs knew fully of the tax-deed proceedings. The trial court found that they had, on two separate

occasions, obtained estimates of redemption and that the period of redemption had been extended by the defendant. The nonredemption must be ascribed to reasons other than want of notice. See *Urban v. Lois, Inc.,* 29 Ill.2d 542; *People v. Orth,* 21 Ill.2d 205; *People v. O'Keefe,* 18 Ill.2d 386.

For the reasons stated, the judgment of the appellate court is reversed.

*Judgment reversed.*