67 Ill. App.3d 122 (1978)
384 N.E.2d 729
In re APPLICATION OF COUNTY TREASURER.  (RONALD MURRAY, Petitioner-Appellee,
v.
EVELYN GERUS, Respondent-Appellant.)
No. 78-406.
Illinois Appellate Court  First District (1st Division).
Opinion filed December 1, 1978.
Frederick S. Stein, of Stein and Weston, of Chicago, for appellant.
Herbert Lesser and Paul S. Vander Woude, both of Hlustik, Huizenga & Williams, Ltd., of Chicago, for appellee.
Judgment affirmed.
Mr. JUSTICE O'CONNOR delivered the opinion of the court:
The trial court granted the petition filed by Donald Murray (petitioner) under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1971, ch. 110, par. 72) and vacated, on the ground of fraud, its earlier order directing the County Clerk of Cook County to issue a tax deed to Evelyn Gerus (respondent). Respondent appeals, contending that the trial court's finding that the tax deed was procured through fraud is against the *123 manifest weight of the evidence and that reversible error was committed by the trial court because of an improper discussion concerning the value of the property.
 1 It is settled law that a tax deed can be set aside only by proceedings under section 72 of the Civil Practice Act and that in such proceedings the findings of the court ordering the issuance of the tax deed cannot be attacked collaterally unless the record establishes fraud. (Smith v. D.R.G., Inc. (1976), 63 Ill.2d 31, 344 N.E.2d 468; In re Application of County Collector (1975), 26 Ill. App.3d 234, 325 N.E.2d 15; In re Application of County Collector (1978), 66 Ill. App.3d 437, 383 N.E.2d 1224.) Fraud has been defined as a wrongful intent, an act calculated to deceive. (Smith v. D.R.G., Inc. (1976), 63 Ill.2d 31, 344 N.E.2d 468; In re Application of County Collector (1978), 66 Ill. App.3d 437, 383 N.E.2d 1224.) Thus the principal question before this court is whether the trial court's finding of fraud is against the manifest weight of the evidence.
The record discloses the following: On January 23, 1974, Evelyn Gerus purchased at auction the vacant lot at 648 West Willow Street in Chicago, Illinois, for the unpaid 1972 real estate taxes and, on October 18, 1976, filed a petition for a tax deed. The property was not redeemed from the tax sale. On February 24, 1977, a hearing was held on her petition for a tax deed and, on March 21, 1977, an order was entered that the tax deed issue to Evelyn Gerus. A tax deed was so issued.
At the hearing on the petition for a tax deed, the only witness was Roy Huffman, a professional tax and title searcher and the former son-in-law of Evelyn Gerus. He testified that he had inspected the vacant and unimproved lot on October 15, 1976. Prior to that, on September 9, 1976, he had made an examination of the tract records to determine the parties in interest and the owner. His examination indicated that the owner was 648 W. Willow Limited Partnership (partnership) and the only other party in interest was the county clerk. He gave the sheriff the address of 1925 North Lincoln Avenue as the address for service on the partnership. The sheriff did not find the partnership at that address. Huffman made a further search to determine if there was a different location for the owner. First of all, he looked at the deed by which title was transferred to the partnership. He testified that it showed that the deed was mailed back to the partnership at the 1925 North Lincoln Avenue address in 1973 when it took title. The Chicago and suburban telephone directories showed no listing for the partnership. The tax delinquent rolls did not list the partnership, but listed Lincoln Park Federal. He telephoned Lincoln Park Federal to try to determine if they could help him as to this property for which the tax bill was being sent to them. To the best of their knowledge, they had no recollection of any interest in the property; it might have *124 been that at one time they held a mortgage or the owner used them for mailing purposes; they really couldn't tell him the reason the tax bill was being sent to them; they had no interest in the property.
Huffman then went to the building at 1925 North Lincoln Avenue, which consisted of two or three stores. He questioned the people there. None of them had heard of the 648 W. Willow Limited Partnership. He also went to a real estate office in the building. The man there said they did not have the partnership in their office, but he gave Huffman the telephone number of the owner of the 1925 North Lincoln Avenue building and indicated that they might have been there at one time and maybe the owner of the building could help Huffman with a forwarding address. Huffman called that telephone number and spoke with a man who indicated he had never heard of the partnership and could not give him any information about it.
Huffman then examined the Corporation Index and found no address. He then notified the sheriff's office that 1925 North Lincoln Avenue was the last known address of the partnership. The sheriff served the county clerk.
The witness also testified that the subsequent taxes for 1973, 1974 and 1975 were unpaid and forfeited to the State and that they were in the process of getting bills which they would pay and come in at a later date. The paid taxes would be submitted with the transcript.
At the end of the hearing, the court stated that there would be a finding that the period of redemption had expired with no redemption having been made, the notices required by law had been given, that due diligence had been used in locating and serving the parties in interest and that the case would be continued for proof of payment of subsequent taxes pending the furnishing of the transcript of the proceedings.
On March 21, 1977, an order was entered directing the issuance of a tax deed to Evelyn Gerus. The order found that all taxes subsequent to the sale had been paid.
On June 2, 1977, Ronald Murray, a general partner in the 648 W. Willow Limited Partnership, filed a petition under section 72 of the Civil Practice Act to vacate the order of March 21, 1977. The petition alleged that fraud was committed on the court in that Roy Huffman testified falsely when he stated that the deed which he examined showed that the deed by which the partnership took title was mailed to the 648 W. Willow Limited Partnership at the 1925 North Lincoln Avenue address, for the reason that the deed shows that Ronald Murray was the person who should receive all subsequent tax bills at the Lincoln Avenue address and that the deed was mailed back to William Levinson, an attorney at 77 West Washington Street. Huffman also testified falsely when he said he had gone to the tax delinquent rolls and checked for an assessment *125 address on the owner and that the Willow Street partnership was not listed. If he had checked the rolls subsequent to 1973, the year the partnership took title, he would have found the name of the assessee as Ronald Murray with his address in Deerfield, Illinois. Huffman also testified falsely when he stated that he had gone to a real estate office in the 1925 North Lincoln Avenue building and was told that the person there could give him the telephone number of the owner of that building, that he called the number given him and spoke with an unnamed man who said he had never heard of the partnership. The petition stated that the owner of the building was Ronald Murray.
On October 6, 1977, a hearing was held on the petition. Andrew N. Samaritano testified that he had a real estate office named Townhall Realty at 1925 North Lincoln Avenue. He was the sole proprietor and he and Kenneth Levin were the only persons in that office during September and October of 1976. He had authority to sell the 648 W. Willow property at that time. He had no recollection of a Roy Huffman during that time coming to his office to inquire concerning the whereabouts of either the 648 W. Willow Limited Partnership or of a Ronald Murray. If anyone inquired about Ronald Murray at his office, he would ascertain the nature of that person's business and decide whether to give him the telephone number of Murray.
Kenneth Levin testified that he was the only other person who would have been in that office in September and October of 1976. He did not recall at any time from 1973 through March of 1977 a Roy Huffman ever coming to the office and inquiring about the whereabouts of the 648 W. Willow Limited Partnership or of Ronald Murray. He did not recall anyone coming into the office between September and October 1976 and inquiring about 648 W. Willow Street. He had never seen Roy Huffman before seeing him now in court. If anyone inquired about Ronald Murray he would refer him to Andrew Samaritano.
Ronald Murray testified that he is a general partner in the 648 W. Willow Limited Partnership and that Townhall Realty had authority to sell the property at 648 W. Willow Street during September and October of 1976. Andrew Samaritano had authority to give out Murray's telephone number and to forward to him any mail addressed to him at Townhall Realty. Murray also testified that he was the general partner of the partnership which owns the 1925 North Lincoln Avenue building. All of the tenants there know him personally. He visits the building two or three times a week. He further testified that he never received a telephone call from Roy Huffman.
William Levinson testified that his law firm represented the 648 W. Willow Limited Partnership. He is the William Levinson at 77 West Washington Street whose name appears at the bottom of the deed *126 conveying title to the limited partnership. To the best of his recollection, no Roy Huffman ever came to his office at any time in 1976 and asked him about the whereabouts of the 648 W. Willow Limited Partnership.
Roy Huffman, called by petitioner under section 60 of the Civil Practice Act, testified that he had been doing tax and title searches for around 13 years. During that time he had searched out more than one thousand titles. He was not employed or paid by anyone to do the tax title search with reference to the Willow Street property. He was asked to do it by Evelyn Gerus, his former mother-in-law, and did the tax buying of it for her benefit. He has bought 10 pieces for her account.
In his tax search of the property involved, he examined the quit-claim deed conveying title to the 648 W. Willow Limited Partnership. It was that examination of this document which caused him to testify at the hearing for a tax deed that the owner was the 648 W. Willow Limited Partnership. The bottom of that document shows that it was mailed to William Levinson at 77 West Washington Street. After examining the document, he made no efforts to find William Levinson. On the bottom right-hand side of the document appears the address of the property as "648 West Willow, Chicago, Ill." with the printed notation beneath it, "The above address is for statistical purposes only and is not a part of the deed." Beneath that appears the printed statement "Send subsequent tax bills to:" with the handwritten notation "Ron Murray, 1925 N. Lincoln, Chicago, Ill." The efforts he made to find Ron Murray at 1925 North Lincoln was to go to that address. There he found an L-shaped two-story structure containing a number of stores and apartments above. He went into some of the stores and found no help whatsoever. He went into a real estate office in the building. There was a man there whose name he did not get and he cannot recall now what he looked like. Huffman questioned whether he could help Huffman locate somebody concerning the property on Willow Street and the address he had and these people. The man indicated he could not help locate those people Huffman was looking for or a limited partnership, but he would give Huffman a phone number to call; it was the number either of the janitor or owner or manager or somebody of the building. He said maybe that person could help Huffman locate the partnership or something; maybe they might have moved out or been prior residents there. Huffman jotted down the number, but could not find it now. He called the number and spoke to a man who did not identify himself. Huffman told the man how he got the phone number and that he thought the man might help him locate the partnership he was looking for. The man said he could not help him.
Huffman further testified that he checked the delinquent tax rolls for 1972 or 1973, but not those prior to 1972.
Called by respondent in her behalf, Huffman testified that *127 throughout his search in preparing to serve notices he was seeking to locate the owner of record, the 648 W. Willow Limited Partnership. Everything he testified to on the hearing of the petition for a tax deed was true to the best of his knowledge and belief then. He searched the telephone directories looking for the 648 W. Willow Limited Partnership. He directed the sheriff to go to the address on the summons to serve 648 W. Willow Limited Partnership. He later determined that service had not been made. The sheriff then sent notice by certified mail.
Roy Huffman further testified that he went to the 1925 North Lincoln Avenue building to look for the name 648 W. Willow Limited Partnership. He did not locate any such name at that address. The place he picked to go into was the real estate office in that building. He went in there looking for the partnership. The man there gave him a telephone number, which he called. The man he spoke to on the telephone was very rude and refused to give his name.
Huffman also testified that when he examined the deed, he made a mistake in writing in his notes that the deed was mailed to 1925 North Lincoln instead of 77 West Washington. He made no attempt to find William Levinson and never spoke to him. He does not believe a copy of the deed was presented to the court at the hearing on the petition for a tax deed.
He tried to find out who the persons were who were members of the partnership by checking the records in the county clerk's office to find if the partnership agreement was recorded, but he found nothing. The partnership acquired title in 1973; he looked at the 1972 and 1973 tax delinquent rolls. When a party acquired title in 1973, it would not appear on the 1972 tax rolls. It might appear on the 1973 tax rolls and it is possible it would appear on the 1974-1975 tax rolls. He did not bother to check the county treasurer's assessment books for 1974 and 1975 because it was his understanding that it was no longer required to serve the tax assessee under the Revenue Act. He did not recall what the address of the taxpayer was on the subsequent tax bills after 1973. He did not obtain a letter of opinion from Chicago Title and Trust Company.
On November 21, 1977, the trial court rendered his decision, stating in part:
"* * * I've read the briefs of all the parties concerned. I'm aware of the fact that due diligence cannot be relitigated by way of petition under Section 72. * * *
* * *
The withholding of any facts or information that would enable the Court, that would enable the Court, to make the type of finding that should be made or is necessary, in my opinion, constitutes deception and fraud upon the Court, a deception; and *128 if certain facts that were known are not presented to the Court or action was not taken pursuant to the  those facts, of course, then it is also deception and fraud upon the taxpayer, also.
* * *
Anyway, the young man in this case who checked the files, makes service upon all the people involved or theoretically was in the exercise of due diligence in ascertaining who the owners of the property were, who were the parties of interest in the property and so on, was a young man who by his own testimony stated he had made over  had participated in 1000 of these cases, that he was well aware of what he must do to find the owners or the parties in interest in order to serve them and notify them properly.
* * *
In any case, in my opinion as I said before, withholding any information which the Petitioner thinks the Court might need or that an ordinary prudent person would think the Court might need in determining whether the persons in interest had been served, amounts to deception and a fraud upon the Court.
* * *
This [the quit-claim deed] had not been shown or presented to the Court, this document, and, of course, the Petitioner for a tax deed must have fully been aware of it because they stated their testimony showed they found the address, the name and so on of Ron Murray upon the deeds.
What they did not inform the Court was that it also contained the name of the counsel, William Levinson, 77 West Washington Street, Chicago, Illinois, who he could have contacted to find where Ron Murray resided if he wanted to.
* * *
The Petitioner for a tax deed was fully aware of the fact that if I had been  by virtue of the fact he had many previous hearings before, the fact that had I been aware of the fact that William Levinson appeared on the quit claim deed, I would not have signed the order. I would have told him to contact Mr. Levinson first to find out where the real party of interest lies.
Secondly, the law requires that the subsequent years' taxes be paid. On the subsequent years' taxes, the name of Ron Murray and his present address  * * * Deerfield is stated. He was getting the tax bills directly. The Petitioner for a tax deed knew that the address, the name and address of the real party in interest, the owner of the property, was on those tax bills. They had not presented them in evidence.
They told the Court they will present them, present the paid tax *129 bills, they had in fact paid the tax bills, and they would present the tax bills at a future time.
It was my error in signing this, the deed. I really thought the tax bills were there, incidentally, but I cannot find the tax bills nor can I find the exhibits in the file. They might have been lost. They may have been there when I signed the order directing the County Clerk to issue a tax deed.
However, they were not presented at the time of the hearing. It is my opinion that the reason they were not presented is because if I had seen the name of the owner and the address of the owner on the 1973 tax bill all of which had been paid, all of which had to be paid before a period of redemption expired  * * *  and before the Petition for a tax deed was heard, it is my opinion it was deliberately withheld by a very, very experienced people in this field, because they knew if I had seen the name and the address of the owner on the tax deed  bills, I would have refused to sign the deed unless and until they notified the owner and brought me proof of the fact they were notified.
* * *
* * * However, I find from this entire course of action that the concealment from me of facts which if they had been called to the address [sic] of the Court would have changed my decision entirely.
I think that there was not only deception as a result, a fraud committed upon the Court, but the Court  I think there is fraud and deception also by not presenting the evidence they had also upon the owner of the property. I therefore will vacate my order of * * * March 24, 1977, ordering the County Clerk to issue a tax deed. That's all. I'll vacate the order."
On December 2, 1977, when the judgment order was presented for entry, respondent's counsel made an offer of proof that the taxes for 1973, 1974 and 1975 had been paid by Evelyn Gerus on March 11, 1977, and asked that the county collector's official receipts be admitted into evidence. The trial court denied the request.
In its order of December 7, 1977, vacating the order of March 21, 1977, and ordering the tax deed to Evelyn Gerus expunged, the court found:
"5. That at the time proceedings were held before this Court on February 24, 1977, counsel for the petitioner, Evelyn Gerus, did state that general real estate taxes for the years 1973, 1974 and 1975 were unpaid and forfeited to the State of Illinois, and that paid receipts for said years showing payment by the petitioner would be submitted to this Court with the transcript of evidence. That *130 such receipts were not submitted with the transcript as promised, which said failure to submit said paid receipts is a fatal defect in tax deed proceedings.
6. That the Petition of Ronald Murray under Section 72 of the Civil Practice Act and the testimony introduced in support of the Petition claims that fraud was committed for and on behalf of Evelyn Gerus. That said fraud was committed against the Court as well as against the former owner of the property by concealing from the Court various facts known, or which should have been known to petitioner, Evelyn Gerus, at the time that evidence was presented before this Court on February 24, 1977.
7. That the fraud committed consisted of concealing various facts, the two most important being that the deed of conveyance had, after recordation thereof, been mailed back to William Levinson, a practicing attorney in Chicago, where the evidence introduced before this Court on February 24, 1977 alleged that the deed was mailed back to the 648 Willow Street Limited Partnership at 1925 N. Lincoln Ave., Chicago. The second most important fact hidden from this Court is that the deed provided that tax bills were to be mailed to one Ronald Murray at 1925 N. Lincoln Ave., Chicago, but that subsequent to the actual recordation of the deed the tax bills were mailed to Ronald Murray at his home address and that said home address appeared on the 1974, 1975 and first installment of 1976 tax bills, all of which were publicly available prior to the hearing before this Court on February 24, 1977.
8. That the witness who appeared on behalf of Evelyn Gerus admitted to participation in approximately 1,000 tax title searches and tax deed proceedings. That said witness is familiar with the requirements of proof before this Court will enter orders for issuance of tax deeds. That the witness knew or should have known that this Court would never have entered its order for tax deed had this Court been advised of the facts set forth in Paragraph 7 above without ordering the witness to make personal service of notice upon the aforesaid Mr. William Levinson and the aforesaid Ronald Murray at the address that appeared on the tax bills issued by the County Collector of Cook County, Illinois. That the failure of said witness to advise the Court of these facts constitutes an intent to deceive this Court and is found to be a fraud upon this Court. In addition thereto, as stated in Paragraph 5 above, the failure of petitioner, Evelyn Gerus, acting by and through her counsel to submit paid receipts for general real estate taxes for the years 1973, *131 1974 and 1975 to this Court with the transcript of evidence is a defect fatal in tax deed proceedings."
On December 12, 1977, Evelyn Gerus moved to attach the paid tax receipts to the transcript of the hearing on the petition for the issuance of the tax deed. On December 15, 1977, the court denied her motion.
Evelyn Gerus argues that the trial court's finding of fraud on the above evidence is against the manifest weight of the evidence. We disagree. In In re Application of the County Collector (1975), 26 Ill. App.3d 234, 325 N.E.2d 15, a tax deed was found to have been fraudulently procured where an instrument in the recorder's office disclosed on its face the owner's interest in the property and her current address and the name of her escrowee, but the owner received no personal notice and the record was void of notice by publication and of an inquiry into the owner's whereabouts. In In re Application of County Treasurer (1975), 32 Ill. App.3d 161, 336 N.E.2d 167, a tax deed was held to have been issued in error where instruments in the recorder's office disclosed the owner's office and residential addresses and the only attempt to serve the owner personally was made at his office and it failed. Concerning the failure to use the owner's residential address, which appeared on the face of the instruments but was not seen by the purchaser's agent, the court stated (32 Ill. App.3d 161, 164):
"* * * A tax purchaser is obliged to look at information contained in county tax and title records so that he may serve the notices required by the Revenue Act. `[H]aving the means before his eyes of ascertaining the truth, by merely looking, in regard to a fact about which it is his duty to know, if he fails to look he does not act in good faith.' (Kenney v. Glos, 258 Ill. 555, 557, 101 N.E. 943; compare Shockley v. Good, 13 Ill.2d 298, 148 N.E.2d 763.) In this case, although admitting that he had examined the deeds, Ohr's agent said he did not see Hoffman's home address which they contained. * * *."
 2, 3 Here, the tax and title search was performed by a man who had made more than 1,000 searches over 13 years. He had consulted the deed which conveyed the property to the 648 W. Willow Limited Partnership, but at the hearing for the tax deed he testified the deed was mailed to the partnership at 1925 North Lincoln Avenue, Chicago. However, the face of the deed showed it was mailed to William Levinson, 77 West Washington Street, Chicago, Illinois. It further showed that subsequent tax bills were to be sent to Ron Murray, 1925 North Lincoln Avenue, Chicago, Illinois. The trial court found that the witness who performed the tax search concealed this information from the court and that if the court had known these facts, an order for the tax deed would not have been granted. We *132 agree with the finding of the trial court that the purchaser withheld enough information to evidence a wrongful intent. Where the deed contains information to ascertain the truth concerning persons to be notified and the purchaser fails to notice it, there is sufficient evidence of bad faith to warrant concluding the deed was procured by fraud. In re Application of County Collector (1975), 26 Ill. App.3d 234, 325 N.E.2d 15; see Keeney v. Glos (1913), 258 Ill. 555, 101 N.E. 943.
In addition, in her reply brief Evelyn Gerus states that when Roy Huffman went to the 1925 North Lincoln Avenue building he was seeking to locate the 648 W. Willow Limited Partnership and not Ronald Murray and that the same was true when he called the telephone number given to him by the man in the real estate office.
Evelyn Gerus argues that the court, in reaching its decision that a fraud had been committed, in reality was deciding the question of diligence anew, from which he was foreclosed by his finding of diligence in the hearing on the petition for a tax deed. The court several times stated that he could not and was not relitigating the question of diligence, but that the testimony concerning what was done and what was not done showed that certain facts were purposely kept from the court and that if he had been aware of the names of Ronald Murray and William Levinson he would have required notice be given them.
This court will not reverse the findings of the trier of fact unless they are against the manifest weight of the evidence. (Zeve v. Levy (1967), 37 Ill.2d 404, 410, 226 N.E.2d 620; Midwest Utility Co., Inc. v. Chicago Title & Trust Co. (1977), 50 Ill. App.3d 721, 731, 365 N.E.2d 1294; In re Application of County Collector (1975), 26 Ill. App.3d 234, 240, 325 N.E.2d 15.) The trial court here heard and saw the witnesses and determined their credibility. On this record, the findings of the circuit court were not against the manifest weight of the evidence.
Evelyn Gerus further argues that the judgment should be reversed because the trial judge, out of the presence of counsel, made inquiry of Ronald Murray regarding the value of the property involved. We find this argument without merit. On November 21, 1977, the trial court orally stated his findings and decision. At the subsequent hearing on December 2, 1977, when the written judgment was presented for entry, counsel for Evelyn Gerus stated that his client had brought to his attention just the day before that after a recess in the hearing on the section 72 petition there was a discussion in open court concerning the value of the property. Counsel for Ronald Murray did not recall any such discussion. The court stated that after he ruled, and not before, he asked what the property was worth. Somebody told him  he thinks the owner said that he had an offer of 30 or 35 thousand. Other than that he did not discuss it. He further stated that he did not think any statement of what the value of a piece of *133 property is would influence or prejudice his thinking as far as the facts and law are concerned and that the other facts presented showed a pattern of deception. It is presumed, and so demonstrated by the record here, that the trial judge considered only competent evidence in arriving at his judgment.
The judgment of the circuit court of Cook County is affirmed.
Affirmed.
McGLOON and BUCKLEY, JJ., concur.