*In re* APPLICATION OF THE COUNTY COLLECTOR FOR JUDGMENT AND ORDER OF SALE AGAINST LANDS AND LOTS RETURNED DELINQUENT FOR NONPAYMENT OF GENERAL TAXES FOR THE YEAR 1982 AND PRIOR YEARS (New York Guardian Mortgagee Corporation, Appellant, v. Capitol Bank and Trust, as Trustee, Appellee).

First District (4th Division) No. 1—89—2837

Opinion filed August 23, 1990.

Rudnick & Wolfe, of Chicago (Seymour Simon, Gerald B. Lurie, and Carolyn S. Reed, of counsel), for appellant.

Joel S. Ostrow, of Chicago (Richard D. Glickman, of counsel), for appellee.

JUSTICE LINN delivered the opinion of the court:

Appellant, New York Guardian Mortgagee Corporation (NYG), appeals from the trial court's denial of its petition to set aside a tax deed issued to C. Nadler Associates on June 5, 1987. NYG, as holder (by assignment) of a mortgage on the residential property in issue, requested the vacation of the tax deed on the grounds that neither NYG nor its assignor was ever served with notice of the application and petition for tax deed. NYG alleged that C. Nadler Associates (CNA) had falsely represented that it had searched the records in the county recorder's office to ascertain the identity of persons interested in the property. The trial court initially entered an order setting aside the tax deed. Capitol Bank & Trust (Capitol), as successor in interest to C. Nadler Associates, appealed from that order. In an unpublished order, this court reversed and remanded for further proceedings to determine whether the trial court had relied on the false affidavit in entering the order setting aside the tax deed.

On remand, the trial court held that it had *not* relied on the affidavit and therefore was obligated to deny the section 2—1401 (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401) petition. Accordingly, the trial court reinstated the tax deed that had been issued to CNA. The court also denied NYG's request for sanctions under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—611).

NYG appeals, contending that the trial court necessarily relied on the false affidavit, as there was no other evidence in the record to establish CNA's compliance with the notice requirements of the Reve-

nue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 744) and Circuit Court Rule 10.3 (Cook County Circuit Court R. 10.3). NYG also argues that the trial court erroneously relied on Chicago Title Insurance Company's title search, which was not a search of the official public records and which was not introduced into evidence in any event. NYG further maintains that even if the trial court's reliance on the title company's records was proper, equity requires that the tax deed be set aside. Finally, NYG requests sanctions pursuant to section 2—611 of the Code of Civil Procedure, for what it terms a frivolous pleading.

We reverse the order denying NYG's petition and remand for entry of an order that vacates the tax deed, but affirm the denial of sanctions under section 2—611.

BACKGROUND

In December 1986 CNA filed a petition for tax deed to property located in Hoffman Estates, Illinois. CNA had purchased the property at a sale conducted by the Cook County collector's office for nonpayment of 1982 taxes. After the redemption period had expired, CNA served notice of its application for tax deed. The affidavit attached to CNA's petition for deed represented that it had "made a search of the appropriate records in the Office of the County Assessor, the County Recorder of Deeds, and Registrar of Torrens Title ***, to determine parties interested in the subject property." CNA did not list NYG as an interested party, and it is undisputed that NYG's mortgage was properly recorded in the public records.

At a hearing on May 21, 1987, CNA's sole witness in support of the application for deed was Michael Halperin, an employee of CNA who testified concerning his conversations with the owners of the property and his inspection of it. He did not testify regarding the statutory notice requirements. On the issue of the title search of the property, CNA's attorney represented to the court that a search performed by Chicago Title Insurance Company (CTIC) had disclosed that "a Mr. Patel" (the owner) was "the only possible interested person in the property."

The CTIC search or title report is prepared from the title company's own tract indices and so states on the face of the report. While the CTIC search was not formally admitted into evidence, the CNA attorney told the court that it showed "no unreleased mortgages of record." He did not tell the court, however, that CNA did not actually search the official public records.

Based on the attorney's representations that there were no inter-

ested persons in the property except the owner, the trial court entered an order directing the county clerk to issue the tax deed on June 5, 1987.

In the fall of 1987, NYG learned of the tax deed and promptly petitioned the court to vacate the deed, pursuant to section 2—1401 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1401.) On March 14, 1988, the trial court granted the petition and set aside the deed, noting that it was "clear that there was no search of the appropriate records in the offices of the Cook County Recorder of Deeds despite what was asserted in the affidavit attached to the application for Deed." The court did not believe that the affidavit was deliberately fraudulent, but found that under the case law it amounted to "constructive fraud."

Capitol, as successor to CNA, appealed to this court, arguing that the tax deed could not be set aside absent actual fraud and that the affidavit in question was not fraudulent. This court, in an unpublished order, found that the affidavit contained a false statement regarding the title search and that such statement indicated an intent that the statement be relied upon. We held that the affidavit was technically false but noted that the record did not reveal whether the trial court relied upon the false affidavit in issuing the deed. Accordingly, we returned the case to the trial court for that court to decide whether it had relied on the false affidavit to such extent that it would not have issued the tax deed had it known that only CTIC's records had been searched.

On remand, the trial court stated that it had relied on the CTIC search and the testimony of the one witness in reaching its decision to grant CNA's application for tax deed. The court stated that it did *not* rely on the false affidavit, which represented that the official public records had been examined. In reaching its determination, the trial court considered Circuit Court Rule 10.3(b), which requires that the tax deed petitioner attach to its application for deed "evidence of search of public records whether by exhibit or affidavit." The court construed this rule as being procedural in nature, one intended to ensure that the tax petitioner was prepared for hearing, not a binding directive that would invalidate tax deeds if the courts relied on CTIC title searches. Notwithstanding its findings, the trial court expressed the opinion that the pending case was one to which equity should apply to set aside the deed.

OPINION

We agree that the tax deed should be set aside. With the benefit

of hindsight, we believe that our previously entered order in the first appeal may have caused the trial court to believe that it had no choice but to deny NYG's section 2—1401 petition because the court had not, in fact, relied on the false affidavit at the time the *ex parte* application for tax deed was heard. Because the trial court indicated its reliance on CTIC title searches as being (presumptively) valid, it did not rely on the representation in the affidavit that the *official* public records had been searched. Therefore, the trial court felt bound to deny the relief it clearly felt NYG was entitled to, because we had remanded the cause for the court to determine its reliance on the false representation, "not for a new hearing." The trial court expressly noted that our decision and its mandate to follow that decision would "result in a great hardship to the [section 2—1401] petitioner" and that NYG "did all that was necessary under the law to protect its interest." The court added that if the mortgage interest "had been brought to the Court's attention and if that [2—1401] petitioner was not served with notice, this Court would not have granted the petition for tax deed."

■ The general purpose of a section 2—1401 petition is to alert the court to such facts existing at the time judgment was entered that would have precluded judgment had the court known of those facts. (*E.g., In re Application of County Treasurer* (1989), 185 Ill. App. 3d 789, 793, 542 N.E.2d 397, 400, *appeal denied* (1989), 127 Ill. 2d 617, 545 N.E.2d 109; see *Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 225, 499 N.E.2d 1381, 1388) (where unjust or unconscionable circumstances exist, equitable principles may justify vacation of a default judgment pursuant to section 2—1401, even if the due diligence requirement has not been satisfied).) If a judgment is entered because of the opposing party's fraud, or when an excusable mistake has occurred, the trial court's decision to vacate the judgment generally will be affirmed. Under this analysis the trial court's express finding that it would not have issued the tax deed had it known of NYG's interest and its further finding that NYG did all that was necessary to protect its interest would certainly suggest that the elements of section 2—1401 were satisfied in this case.

■ Capitol nevertheless appealed from the court's original decision to vacate the tax deed on the basis of case law that implies that tax deeds may be set aside only if they are procured by a pattern of deceit or evidence of a deliberate attempt to defraud interested parties. (*E.g., In re Application of County Treasurer* (1982), 92 Ill. 2d 400, 442 N.E.2d 216; *Exline v. Weldon* (1974), 57 Ill. 2d 105, 311 N.E.2d 102; *Zeve v. Levy* (1967), 37 Ill. 2d 404, 226 N.E.2d 620.)

These and similar cases emphasize the legislative policy that tax deeds should be merchantable and, therefore, not easily subjected to collateral attack. (See *In re Application of County Treasurer & Ex Officio County Collector* (1987), 171 Ill. App. 3d 644, 648, 525 N.E.2d 852, 855, *appeal denied* (1988), 123 Ill. 2d 558, 535 N.E.2d 399.) When the matter was initially before this court, we found that the affidavit was "technically false" but remanded for a determination of whether the trial court had "relied on the false representation that the actual records of the Recorder of Deeds had been searched" and whether the tax deed would not have been issued with the knowledge that only CTIC's records had been searched.

Capitol argues that the trial court, and this court, thereafter became bound by the law of the case doctrine, citing *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833. According to Capitol's interpretation, our hands are bound by our prior, unpublished order and once the trial court clarified that it had not relied on the false affidavit, we could only affirm its denial of relief to NYG.

■ We do not take so narrow a view. If this court cannot correct an inequitable and erroneous result, especially if it may have been caused in part by our prior ruling, we then abdicate our responsibilities as a reviewing court.

The *First Arlington* case, which Capitol relies on, specifically stated that even if the trial court had misunderstood its prior opinion in that case, "such error would not be grounds for reversal, since plaintiff has failed to demonstrate any error which 'was substantially prejudicial and affected the outcome [in] the trial court.'" *First Arlington National Bank v. Stathis*, 115 Ill. App. 3d 403, 407 n.3, 450 N.E.2d 833, 837 n.3, quoting *Canales v. Dominick's Finer Foods* (1981), 92 Ill. App. 3d 773, 778, 416 N.E.2d 303, 308.

In contrast, in the pending case the trial court interpreted our prior order in such a way as to totally foreclose relief to NYG upon a finding that it had not relied on the false affidavit. By its stated belief that we sent the case back for a narrow, factual determination of that one issue, the court felt obligated to deny the section 2—1401 petition. That the court's interpretation of our order clearly affected the outcome on remand is evident by that court's comments on the harshness of the result and its finding that the tax deed never would have issued in the first place, had the court been apprised of the true facts.

The record reveals that the trial court vacated the tax deed upon NYG's section 2—1401 petition because the nature of the "constructive fraud" was such that NYG, a properly recorded interest-holder in

the property, never received the requisite notice of the tax deed proceedings. The reason it was unaware of the proceedings had nothing to do with its own negligence or fault. Instead, the tax petitioner, in relying on CTIC's title search, neglected to independently check the official records of the county recorder's office, as required by law, and then stated that it had in the affidavit. Accordingly, the court believed that equitable considerations required the vacation of the deed.

 Our prior, unpublished order did not consider or rule on the equity argument or other possible grounds for vacating the tax deed. By focusing in on the "fraud" aspects of the case, we may have understated the tax petitioner's duty to strictly comply with the statutory notice requirements. We also failed to directly comment upon this fundamental, equitable notion: A party whose publicly recorded interest in property is judicially terminated, without notice, should not be bound by that judgment when lack of notice is caused by the tax deed petitioner's complete failure to search the official public records. That is particularly true where, as here, the tax deed petitioner responsible for the search swears by affidavit that it has in fact searched the required records. Allowing the party at fault to then benefit from its own misconduct is absurd. We therefore take this opportunity to correct any misapprehensions that may have been caused by our prior order in this case.

During the original proceedings on NYG's section 2—1401 petition to vacate the tax deed, Capitol strongly objected to the notion that its predecessor, CNA, had committed fraud in the procurement of the deed. The trial court examined the pertinent cases at length before rejecting Capitol's position that *actual* fraud is the *sole* ground for setting aside a tax deed pursuant to a section 2—1401 petition. As the trial court discerned, none of the cases involved facts where, as here, a materially interested party was *never even identified from the public records*, through the fault of the tax petitioner. For example, the court cited *Village of Dolton v. First National Bank* (1957), 12 Ill. 2d 435, 147 N.E.2d 62, in which the interested party was identified, along with her freehold interest in the property. There the tax petitioner had not been able to locate the current address of the owner in the course of the search. In fact, the owner had sought to conceal her ownership of the property and changed her address for receiving tax notices. The supreme court ruled that it would not disturb the trial court's determination that the tax petitioner's search had been sufficient, and noted in passing that no fraud had been alleged.

Similarly, many of the cases Capitol cited for the proposition that only actual fraud justifies vacation of a tax deed may be distinguished

from the pending situation on the grounds that they did not involve a failure to comply with the mandate of searching the public records. In each case, the tax petitioners or their agents had satisfied the statutory notice requirements by attempting to locate and serve the interested parties, and when their efforts failed, the courts held that absent fraud they would not set aside the deeds. See, *e.g.*, *In re Application of County Treasurer* (1982), 92 Ill. 2d 400, 442 N.E.2d 216 (no fraud proved where sheriff failed to properly serve owners but land trustee, the legal titleholder, was served by registered mail months before the proceedings); *Smith v. D.R.G., Inc.* (1976), 63 Ill. 2d 31, 344 N.E.2d 468 (tax deed petitioner's agent personally served both owners, although they contended only one had been served; court ruled that factual question regarding service was decided by trial court and not subject to collateral attack); *Zeve v. Levy* (1967), 37 Ill. 2d 404, 226 N.E.2d 620 (no fraud on the part of tax petitioner whose agent identified an interested party from the public records but could not ascertain current address; agent served actual notice of proceedings upon the occupants of the house, who were the contract purchasers of the unlocated party); *Exline v. Weldon* (1974), 57 Ill. 2d 105, 311 N.E.2d 102 (Cook County residents who owned Lake County property did not receive notice of tax deed proceedings despite fact that their attorney's name was listed in the deed; court held that tax petitioner's failure to contact attorney and his search of fewer than all Cook County telephone directories did not constitute fraud).

■ In the pending case, the trial court discussed the above cases and others, noting that in each, "there was at least some notice. In the present case no attempt was made to serve the interested party by any means."

This, we believe, is a critical distinction. A trial court's factual determination of the diligent inquiries that a tax petitioner makes in serving notice is one that should not be easily attacked on collateral review. However, in each case, the tax petitioner had located the interested parties through searching the appropriate records, unlike the circumstances before us in this case. Here, the tax petitioner relied on the CTIC search and then represented to the court that the official public records had been searched.

■ It may be that CTIC searches are customarily used in tax deed proceedings, as the trial court indicated, and it may be that these searches are accurate 99.5% of the time. We appreciate the trial court's concern that the usefulness of CTIC searches not be denigrated. When the tax deed petitioner substitutes a CTIC search for his or her own search of the official public records, however, the peti-

tioner should bear the risk of the type of omission that occurred here. Presumably, title insurance companies are set up to insure against such risks and the party relying thereon may be indemnified for damages arising from such omissions. It is unthinkable that the innocent party who relies on public recordation of its interest should suffer the termination of its rights under such circumstances.

■ The Illinois Revenue Act requires purchasers of a delinquent tax property to

"give[ ] notice of the sale *** to the owners, occupants, and parties interested in the premises as hereafter provided.

* * *

Such notice shall be served upon *** parties interested in the real estate sold, if upon diligent inquiry they can be found in the county, and upon the occupants of the real estate in the following manner: *** [as to corporations, partnerships, trustees of corporations, etc.] by leaving a copy of the notice with the person designated by the Civil Practice Law ***." Ill. Rev. Stat. 1987, ch. 120, par. 744.

Circuit Court Rule 10.3 states that petitions for tax deeds shall not be assigned or heard until an application for tax deed and order directing the issuance of such deed has been filed with the clerk of the county division. The rule states that "[a]n application shall have" attached to it the tax petitioner's "evidence of search of public records" as well as an affidavit from the petitioner or agent "showing any information relevant to establishing that the notices required by the Revenue Act and Torrens Act have been given and that petitioner has fully complied with all provisions of law authorizing the issuance of a tax deed." Cook County Circuit Court R. 10.3(b).

In the pending case, CNA's affidavit conformed to these requirements on its face. Ergo, there was no reason to deny issuance of the tax deed at the time. When asked to reconsider its ruling in light of the actual facts, the trial court did so.

■ The history of the pending case illustrates a problem that arises in the attempt to fit all petitions to vacate tax deeds into the framework of fraud. (See *In re Application of County Treasurer* (1982), 92 Ill. 2d 400, 409, 442 N.E.2d 216, 221 (Simon, J., specially concurring).) While we can, and do, find examples in which the trial court at length explains its belief that fraud has indeed occurred (see *In re Application of County Treasurer* (1978), 67 Ill. App. 3d 122, 384 N.E.2d 729), not all circumstances under which tax deeds should be set aside are caused by an evil intent on the part of the tax petitioner. Recent decisions have increasingly relied on equitable principles to afford relief

for parties who, through no fault of their own (and through no fraud by any party), stand to lose property in which they have a considerable interest. See *e.g.*, *In re Application of County Treasurer & Ex Officio County Collector* (1987), 171 Ill. App. 3d 644, 525 N.E.2d 852 *(Sadacca)*; *In re Application of County Treasurer* (1980), 84 Ill. App. 3d 506, 405 N.E.2d 869, *appeal denied sub nom. Atlantic Municipal Corp. v. McGuirk* (1980), 81 Ill. 2d 589 *(McGuirk)*.

In *Sadacca* the court applied equity to vacate a tax deed that was the product of a clerk's error, rather than fraud. Because of the error, Sadacca in good faith paid some, but not all, of the delinquent taxes. Sadacca believed he had redeemed his property and therefore did not attend the hearing for issuance of tax deeds, although he was notified of it. Relying in part on *McGuirk*, the court in *Sadacca* held that equity should intervene, especially where the tax petitioner would not be injured because it had been awarded an amount that was three times the price paid for the tax deeds, plus interest.[1] The court in *Sadacca* cited many of the same "fraud" cases previously discussed in the instant opinion as standing "for the proposition that the policy in Illinois is to convey merchantable title to a tax deed purchaser" and distinguished them as not involving "the mistake of a public official frustrating a property owner's right to redeem." *Sadacca*, 171 Ill. App. 3d at 649, 525 N.E.2d at 855.

The trial court in the pending case similarly found that Capitol's error frustrated the right of the mortgage holder, NYG, to receive statutory notice to protect its interest.

Another case, *In re Application of County Treasurer* (1989), 185 Ill. App. 3d 789, 542 N.E.2d 397, *appeal denied* (1989), 127 Ill. 2d 617, 545 N.E.2d 109 *(Fredericks)*, reaffirmed the role of equity, in the proper situation, to grant relief to interested parties whose rights are terminated when clerks' errors prevent them from exercising a substantial right, such as the right to redeem property. In *Fredericks*, such an error grew into a major problem for the occupants of one unit in a condominium development when it turned out that they were in fact the legal owners of a different unit in the same development, and the occupants of that unit were the record owners of their unit. Both parties paid real estate taxes through their banks, to the tax index number both had been assigned. This resulted in a double payment of taxes to one of the units and no payments to the other. The owners of the unit which had not received a credit for taxes did not appear in

---

[1] In the pending case the trial court also noted that Capitol would be entitled to an amount in excess of what it paid.

court to contest the sale of the property for back taxes, nor did they defend against the issuance of the tax deed. When Midwest, the tax deed owner, subsequently tried to evict them, they filed a section 2—1401 petition to vacate the deed. The trial court concluded that the tax deed should be vacated to avoid injustice and that Midwest had committed fraud. The appellate court declined to rule on the fraud issue, but nevertheless upheld the trial court's vacation of the tax deed, to avoid injustice.

We are compelled to follow the lead of *Fredericks* and the other cases decided under principles of equity. Denying NYG relief under the facts of this case would be to condone, without precedent, a tax petitioner's ability to ignore the statutory notice requirements, misrepresent its efforts to comply with the statute, and benefit from its own wrongdoing. Moreover, our decision in no way undercuts the policy of the Revenue Act; merchantability of title cannot be presumed if the procedures for obtaining a tax deed are ignored in the first place. Indeed, while NYG does not specifically base its position on a jurisdictional, due process argument, we question whether a party with a duly recorded, significant interest in real estate can have that interest terminated without notice of any sort. See *Parrish v. Glen Ellyn Savings & Loan Association* (1990), 193 Ill. App. 3d 629, 550 N.E.2d 43 (holding that a loan guarantor could not be bound by a default, deficiency judgment entered against it following foreclosure of the mortgage where guarantor had received no notice; limitations of section 2—1401 petitions do not apply because void judgment may be attacked at any time, either directly or collaterally); *Theodorakakis v. Kogut* (1990), 194 Ill. App. 3d 586, 551 N.E.2d 261 (plaintiff's failure to effect service of process in manner directed by statute rendered default judgment against trustee bank void *ab initio*).

■ In any event, we hold that equity requires this court to reverse the trial court's reluctant denial of NYG's section 2—1401 petition, reinstate that court's previous ruling that did grant NYG's petition, and remand for entry of an order that vacates the tax deed issued in this case.

■ We decline NYG's invitation to assess sanctions against Capitol, however. The sanction NYG requests, vacation of the tax deed, is not the usual request for attorney fees under section 2—611. Moreover, in light of our decision, there is no need for such "sanction." We do not find the litigation to be frivolous, although it was caused by CNA's error, because of the limited grounds upon which tax deeds may be vacated and the apparent confusion in the decisional law regarding this matter.

For the foregoing reasons, we reverse the trial court's order that denied NYG's petition for vacation of the tax deed, remand for entry of an appropriate order, and affirm the trial court's denial of NYG's request for sanctions.

Affirmed in part; reversed in part and remanded for entry of an appropriate order.

McMORROW, P.J., and JOHNSON, J., concur.