*In re* APPLICATION OF THE COUNTY TREASURER AND *ex officio* COUNTY COLLECTOR, for Judgment and Order of Sale for Nonpayment of General Taxes and Special Assessments for the Year 1992 and Prior Years (Carol R. Huff, Petitioner-Appellant, v. The County Treasurer *et al.*, Respondents-Appellees).

Third District    No. 3—98—0816

Opinion filed May 4, 1999.

John Barr (argued), of Barr & Barr, of Decatur, for appellant.

Kenneth M. Collinson (argued), of Collinson & Darrow, of Milan, for appellee.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff Carol Huff appeals from the trial court's vacation of a tax deed that she was issued. The trial court found that Huff committed fraud by representing to the court that all interested parties had been properly served with notice of the tax deed proceeding. We disagree and reverse.

## FACTS

At a tax sale, Huff purchased tax certificates for the delinquent

real estate taxes on a parcel of property owned by defendant Charles E. Johnson, Ltd. (corporation). At the time of the litigation, Charles E. Johnson, D.D.S., was the sole officer, director and shareholder of the corporation. Dr. Johnson used part of the property as his dental office and rented out the remainder to a paint store, owned and operated by Ronald Harris (renter).

After the purchase, Huff prepared "take notice" forms to be mailed by the county clerk and served by the county sheriff on all interested parties. Huff also prepared a master sheet that provided instructions to the sheriff's office for service of the forms. Huff delivered the notices and the master sheet to Sharon Young, an employee of the sheriff's office. Young then prepared a face sheet for use by the deputy who was going to serve the notices. When she prepared the face sheet, Young omitted the term "Ltd." when transferring the corporation's name from the master sheet to the face sheet.

Dr. Johnson's wife, Beverly, worked as Dr. Johnson's secretary at the time of the tax proceeding. It was her responsibility to pay the real estate taxes for her husband's office. Beverly failed to pay the taxes and wished to hide this fact from Dr. Johnson. Therefore, when she received the notice forms by certified mail, she did not present the forms to him.

When Deputy David Watkins went to the dental office to serve the notices, Dr. Johnson was with a patient. Watkins served Beverly and also delivered to her the notice forms intended for Dr. Johnson. Nevertheless, on the sheriff's returns filed by Watkins, he indicated that he had made personal service upon Dr. Johnson. However, he did not indicate that service was made upon the corporation. The bill that Huff received from the sheriff's office for the service also stated that Dr. Johnson was served. Beverly did not give Dr. Johnson his notices.

When the period for redemption of the taxes on the property expired, Huff filed an application for an order directing the county clerk to issue a tax deed. Attached to the application was an affidavit in which Huff swore service of notice had been made upon Dr. Johnson, his corporation and all other interested parties. At the hearing on the petition, the sheriff's returns were admitted into evidence. The court granted the petition and Huff was issued a tax deed.

Following the issuance of the tax deed, the renter began paying rent to Huff. When Dr. Johnson questioned him about the rent payments, the renter told Dr. Johnson that he had been presented with a document by Huff that stated Huff now owned the property. Dr. Johnson then questioned Beverly. She tried to convince Dr. Johnson that the whole thing was a misunderstanding. To do so, Beverly forged a letter that purported to be from the county treasurer which

explained that the tax sale was an error. Beverly also altered cancelled checks from previous years so that it would appear that she had paid the real estate taxes for the years in question. During this time, Huff's company wrote letters to Dr. Johnson's office. Beverly also forged responses to these letters.

When Beverly finally confessed and Dr. Johnson realized what had happened, he filed a motion for relief from judgment under section 2—1401 of Code of Civil Procedure (Civil Procedure Code) (735 ILCS 5/2—1401 (West 1996)) seeking a vacation of the tax deed issued to Huff. After a hearing, the court granted Dr. Johnson's motion. The court primarily relied on the fact that in her affidavit Huff swore that Charles E. Johnson, D.D.S., Ltd., had been served with notice. The court called this statement a deception and found clear and convincing evidence that Huff procured the tax deed through fraud. The parties later entered into an agreed order providing that the corporation would pay Huff $16,687.76 as a redemption amount. Huff now appeals.

## ANALYSIS

Huff's central argument on appeal is that Johnson failed to prove that Huff procured the tax deed through fraud and that such proof was necessary in order for the court to have vacated the issuance of the tax deed. Johnson, on the other hand, contends that Huff obtained the tax deed fraudulently. In particular, he maintains that the affidavit attached to Huff's tax deed application, in which she swore the corporation had been served, constitutes a fraud. We disagree.

■ Under the Property Tax Code (Tax Code) (35 ILCS 200/1—1 *et seq.*) (West 1996)), tax deeds are uncontestable except by direct appeal or by collateral attack under section 2—1401 of the Civil Procedure Code. 735 ILCS 5/2—1401 (West 1996). *In re Application of the County Treasurer*, 92 Ill. 2d 400, 442 N.E.2d 216 (1982) (*Congua*). The Tax Code further limits the grounds for collateral relief under the Civil Procedure Code to proof by clear and convincing evidence that the tax deed was procured by fraud or deception by the tax purchaser. 35 ILCS 200/22—45 (West 1996); *In re Application of the County Treasurer & ex officio County Collector*, 171 Ill. App. 3d 644, 525 N.E.2d 852 (1987). Without proof of fraud, proof that the owner did not actually receive notice of the tax sale, even if the statement has been made to the court that service was made, is not sufficient grounds to grant section 2—1401 relief. *Smith v. D.R.G., Inc.*, 63 Ill. 2d 31, 344 N.E.2d 468 (1976). In addition, the Tax Code is to be liberally construed so that tax deeds shall convey merchantable title. *Congua*, 92 Ill. 2d at 406, 442 N.E.2d at 219.

■ There is no indication that Huff knew Johnson had not been personally served and was unaware of the tax deed proceeding. Absent such knowledge, it is not possible for Huff to have possessed the requisite intent to have perpetrated a fraud. In the context of the case at hand, fraud implies "a wrongful intent—an act calculated to deceive." *Dahlke v. Hawthorne, Lane & Co.*, 36 Ill. 2d 241, 245, 222 N.E.2d 465 (1966). The record is devoid of any evidence of intentional deception or wrongful intent on the part of Huff. Upon review of the record, it appears that Huff simply relied on Watkins' representation that he had personally served Johnson. Huff stated that she believed that such personal service, actually made upon the sole shareholder, director and registered agent of the corporation, was sufficient to constitute service upon the corporation. The trial court made no finding that this statement lacked credibility. Consequently, regardless of the accuracy of her belief, Huff's statements and actions concerning her procurement of the tax deed cannot be fairly characterized as fraudulent.

Johnson also argues that, even in the absence of fraud, we should affirm the trial court's vacation of the tax deed. He cites *In re Application of the County Collector for Judgment & Order of Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1982 & Prior Years*, 202 Ill. App. 3d 405, 559 N.E.2d 1006 (1990) (*New York Guardian*), for the proposition that the proof of fraud requirement should be replaced with an equity-driven analysis. In that case, the court relied on equitable principles to afford relief to a party who, through no fault of his own and through no fraud by any party, stood to lose property in which he had a significant interest. *New York Guardian*, 202 Ill. App. 3d at 414-15, 559 N.E.2d at 1012.

To date, however, this equity-driven analysis has not been adopted by our supreme court, nor has the legislature amended the Tax Code to encompass such reasoning. Absent such approval by either the supreme court or the legislature, we decline to follow the rationale of cases like *New York Guardian*. Instead, we heed the plain language of the Tax Code and the majority of case law both of which require proof of fraud before a tax deed may be set aside. Accordingly, we reverse.

For the foregoing reasons, we reverse the decision of the circuit court of Rock Island County.

Reversed.

HOMER and KOEHLER, JJ., concur.