MARY GOLDEN, Administratrix of the Estate of Clifford Franklin Golden v. RANDY REGISTER and ROBERT TYNDALL

No. 803SC533

(Filed 17 February 1981)

**Negligence § 35.4— minor injured during tobacco harvesting — contributory negligence**

> In an action to recover for the alleged wrongful death of plaintiff's son when he was run over by a truck operated by one defendant while both were employed by the other defendant on his farm, directed verdict for defendants was properly entered on the ground that plaintiff's 14 year old son was contributorily negligent as a matter of law where the evidence tended to show that he had worked on a farm during the previous summer; for three weeks prior to his death he had worked for defendant farm owner; he and his young fellow workers had been warned of the danger of "skiing" behind and under a ¾-ton truck used to carry tobacco racks; the operation of the truck and the loading of the tobacco racks, hauling them away from the harvester, and returning to the harvester loaded with empty racks was done routinely, and deceased knew or should have known how the truck approached and circled the harvester, stopped, and backed up near the harvester for unloading; in defiance of a warning or warnings, deceased and his companion began "skiing" when the truck was about 500 feet from the harvester; and deceased's companion lost his grip and fell from the slow moving truck without injury, while deceased continued "skiing" as the truck circled the harvester and stopped.

APPEAL by plaintiff from *Stevens, Judge.* Judgment entered 2 November 1979 in Superior Court, CRAVEN County. Heard in the Court of Appeals 6 January 1981.

Plaintiff seeks to recover for the alleged wrongful death of her son, Frankie, aged 14 at the time of death on 18 July 1974 when he was run over by a truck operated by defendant Randy Register while he and Frankie were employed by defendant Robert Tyndall on his farm.

It is admitted in the pleadings that defendant Tyndall employed Frankie Golden, Randy Register and other young boys for part-time work on his farm. In harvesting his tobacco crop Tyndall utilized a mechanized, self-propelled, four-row tobacco harvester, two tiers or stories high. Frankie was employed as a tobacco primer to work on and in connection with the harvester. A ¾-ton truck was used to pick up the loaded racks or trays of tobacco from the harvester in the fields, take them to the curing or storage barns and return with empty racks to the harvester.

Plaintiff alleged that defendant Tyndall was negligent *per se* in that he hired Frankie Golden, under 16 years of age, for work on or around power-driven machinery in violation of G.S. 110-6. Defendants moved for summary judgment "on the ground that there is no genuine . . . issue of material fact entitling the plaintiff to prevail on the question of negligent hiring of the plaintiff's intestate by the defendant . . . ." The trial court allowed summary judgment "relating to the issue of negligence with respect to employment in violation of [G.S. 110-6]."

At trial the plaintiff's evidence tended to show the following:

In harvesting his tobacco crop defendant Tyndall used two self-propelled tobacco harvesters. Six or seven workers were used on each harvester; four sat in seats close to the ground and picked the leaves from the stalks as the harvester moved slowly between the tobacco rows. The leaves were loaded into racks. When full, the racks were removed from the harvester by the workers and loaded on a flat-bed ¾-ton truck, which carried the racks to the storage or curing barns. The truck then returned with empty racks to the harvester and backed up near the harvester for removal of the racks from the truck to the harvester. Defendant Tyndall employed several boys, including Frankie Golden, under 16 years of age, on a part-time basis to work on the harvesters and paid them an hourly wage. Defendant Register, aged 18, nephew of defendant Tyndall, operated one of the ¾-ton trucks. He had been employed on a part-time basis by Tyndall for several years.

Frankie Golden had been working for Tyndall about three weeks before his death on 18 July 1974. Three days before the 18th, defendant Register observed Frankie and two other young boys "skiing" behind his ¾-ton truck by placing their hands through holes located in and near the rear of the truck bed. Register warned them. Defendant Tyndall testified that only on one occasion had he heard that several young boys were observed "skiing," and that he warned them as a group.

On the morning of the 18th, defendant Register drove the truck, loaded with tobacco-filled racks, from the harvester to the barn. He was returning with empty racks on a dirt road when he saw Wilbur Hicks, Frankie Golden, and Michael Foreman beside the road about 500 feet from the harvester. He stopped the truck to give them a ride to the harvester. They jumped on the truck bed. He

could not see to the rear by using the inside rearview mirror. The truck had outside rear mirrors, and he could only see the feet of Hicks hanging from the passenger side of the truck bed.

Frankie Golden and Foreman jumped from the truck bed, held on to the truck bed through holes in the bed and began skiing. Foreman fell off when his feet struck some grass in the dirt road. Defendant Register slowly drove the truck around the harvester, stopped, looked in the outside rearview mirror and saw nothing behind him. He thought the boys were on the truck. He did not yell or blow the horn. He had instructed all the boys previously to wait until he backed the truck near the harvester before they began unloading the empty racks from the truck and placing them on the harvester. In circling, stopping, and backing the truck to the harvester he was following a routine which was known by all of the workers. He backed the truck slowly for 5 or 6 feet when he heard a yell. He stopped the truck, got out, and saw Frankie Golden lying under the truck. Frankie was conscious and said he could not breathe. Frankie died shortly after reaching the hospital.

At the close of plaintiff's evidence the defendants moved for a directed verdict. The motion was granted.

*Kennedy W. Ward for plaintiff appellant.*

*Ward and Smith by John A. J. Ward and Stith and Stith by F. Blackwell Stith for defendant appellees.*

CLARK, Judge.

In determining whether the trial court erred in granting the defendants' motion for directed verdict, we elect first to direct our attention to the question of contributory negligence on the part of Frankie Golden, deceased, because this question is conspicuously raised by the evidence in the record on appeal. In doing so we do not concede or infer that there was sufficient evidence to warrant submission to the jury of the issue of negligence by the defendants, or either of them.

And in first going directly to the contributory negligence issue, we do not consider whether the trial court erred in ruling that there was no actionable negligence by defendants for violation of G.S. 110-6, which prohibits the employment of youths under 16 years of age for farm work in and around power-driven machinery.

Golden v. Register

However, we note that G.S. 110-6 was repealed by the Wage and Hour Act of 1979 (Ch. 839), effective 1 July 1979, and is now supplanted largely by G.S. 95-25.5 and G.S. 95-25.23. We note too that G.S. 95-25.14 now totally exempts workers engaged in agriculture from the requirements of the Wage and Hour Act of 1979. Further, if defendant Tyndall violated G.S. 110-6, which was then still in effect, by employing 14-year-old Frankie Golden in the summer of 1974 to work on his tobacco harvester, the plaintiff would still have the burden of proving proximate cause, the causal connection between the statutory violation and Frankie's death from being crushed by the truck at a time when Frankie was not engaged in doing the work which he was employed to do.

It appears obvious to us that Frankie Golden was contributorily negligent as a matter of law, and that the directed verdict for defendants was properly entered.

The deceased was 14 years of age at the time of his death, having attained that age on 1 November 1973. He did not have the benefit of the established rule that a person between the ages of seven and fourteen is presumed to be incapable of contributory negligence and may not be held contributorily negligent as a matter of law. *Weeks v. Barnard*, 265 N.C. 339, 143 S.E. 2d 809 (1965); *Wooten v. Cagle*, 268 N.C. 366, 150 S.E. 2d 738 (1966). After reaching the age of 14 there is a rebuttable presumption that the youth possessed the capacity of an adult to protect himself, and he is therefore presumptively chargeable with the same standard of care for his own safety as if he were an adult. *Welch v. Jenkins*, 271 N.C. 138, 155 S.E. 2d 763 (1967); *Edwards v. Edwards*, 3 N.C. App. 215, 164 S.E. 2d 383 (1968); 9 Strong's N.C. Index, *Negligence*, § 18. In the case *sub judice* there was no attempt to rebut the presumption of the deceased's capacity to exercise due care for his own safety, or to show that he was lacking in the ability, capacity, or intelligence of the ordinary 14-year-old boy.

In determining whether Frankie Golden was contributorily negligent as a matter of law, we find particularly significant the evidence tending to show the following: Frankie had worked on a farm during the summer of 1973, earning $20.00 per day. For three weeks prior to his death on 18 July 1974 he had worked for defendant Tyndall. He and his young fellow workers had been warned of the danger of skiing behind and under the ¾-ton truck. The opera-

tion of the truck in the loading of the tobacco racks, hauling them away from the harvester, and returning to the harvester loaded with empty racks was done routinely and Frankie knew or should have known how the truck approached and circled the harvester, stopped, and backed up near the harvester for unloading. In defiance of a warning or warnings, Frankie and his companion, Michael Foreman, began skiing when the truck was about 500 feet from the harvester; Michael lost his grip and fell from the slow-moving truck without injury. Frankie continued skiing as the truck circled the harvester and stopped.

We think it is clear that Frankie knowingly engaged in hazardous horseplay; that he could have released his hold and stopped skiing at any time without injury to himself; that he continued in the dangerous conduct as the truck neared and circled the harvester until it stopped to back up. It does not appear from the evidence whether Frankie lost his grip and fell under the wheel of the truck or intentionally released his grip and attempted to crawl from under the truck when it stopped. In either event it is manifest that he failed to use due care for his own safety, and his contributory negligence bars recovery.

Affirmed.

Judges HEDRICK and MARTIN (Robert M.) concur.