ANN H. CAMPBELL, Adm'r of the Estate of Douglas L. Campbell, Deceased, Plaintiff-Appellee, v. HAROLD W. MORINE, Defendant-Appellant.

Third District   No. 3—90—0666

Opinion filed January 16, 1992.

STOUDER, J., dissenting.

Ackman, Marek, Boyd & Simutis, of Kankakee (J. Dennis Marek, of counsel), for appellant.

John J. Corbett, Ltd., of Chicago (John J. Corbett, of counsel), for appellee.

JUSTICE McCUSKEY delivered the opinion of the court:

Defendant, Harold Morine, appeals the trial court's judgment finding him liable for damages of $181,296.08 arising out of an accident which caused the death of Douglas Campbell. We affirm.

Plaintiff, Ann Campbell, decedent's mother, filed a complaint against Harold Morine, claiming that his negligent driving caused her son's death. Douglas Campbell, age 15, was killed while jogging on Limestone Road in rural Kankakee County. Harold Morine, age 21, was the driver of an automobile which struck and killed Campbell approximately one-quarter of a mile from the intersection of Illinois Route 17 and Limestone Road.

At the location of the accident, Limestone Road is dark, flat, straight, and does not have sidewalks. The shoulders of Limestone Road are approximately 32 inches wide, and they are adjacent to a fairly steep ditch which is located on both sides of the roadway.

On February 21, 1987, at approximately 8:30 p.m., Douglas Campbell and his friend, Dustin Honn, age 15, were jogging side by side in a southerly direction near the center line of Limestone Road. Campbell was jogging near the center line in the southbound lane. Honn, while next to Campbell, was jogging near the center line in the northbound lane. Campbell was wearing very light gray sweatpants, white athletic shoes, and a Herscher High School athletic jacket. Campbell was a letterman on his high school's cross-country team. The athletic jacket was black with the word "Herscher" across the back in large yellow letters on a white background. The athletic jacket had yellow and white stripes at the collar, waist, and bottom of the sleeves. Honn was wearing light-colored clothing at the time of the accident. Both boys regularly jogged on Limestone Road, which is the only direct route between Honn's home, Limestone Grade School, and Campbell's home in the Oakdale Acres subdivision.

Dustin Honn testified that while he and Campbell were jogging on Limestone Road toward Campbell's home, he did not observe any traffic traveling south, hear the sound of a horn, or see any headlights immediately prior to the accident. Honn testified that both he and Campbell regularly checked over their shoulders to see if any vehicles were approaching. Honn believed that Morine's vehicle was traveling about 55 miles per hour at the time it struck Campbell. The legal speed limit on Limestone Road is 55 miles per hour.

On the night of the accident, Morine was driving a 1980 Mercury Cougar with altered headlights. Morine had been involved in another recent automobile accident which caused only his bright lights to function. As a result of that accident, Morine placed duct tape over his two outside headlights so that he could drive at night with his high beams on constantly. Morine also failed to completely tape over both outside headlights because he ran out of duct tape. Therefore, each outside headlamp had a very small exposed area which also emitted

light. The prior accident prevented Morine from using his low beams. Morine chose to place the duct tape over the outside lights rather than have them repaired.

Cliff Saupe, principal of Limestone Grade School, testified that on the evening of the accident, he was driving northbound on Limestone Road. Saupe was driving with his low beams on when he noticed two people walking southerly on Limestone Road. He would later learn the two people were Douglas Campbell and Dustin Honn. Several minutes after this observation, Saupe returned from Limestone School to notice that an accident had occurred. Saupe observed his former students, Dustin Honn and Harold Morine, at the scene of the accident. However, Saupe did not know how the accident occurred.

Richard Magruder testified that on the evening of the accident, he was driving at 40 miles per hour northbound on Limestone Road. He was driving with his low beam headlights on when he observed two joggers running in the roadway. Magruder testified the joggers were illuminated by the headlights of a southbound vehicle. He later learned the joggers were the decedent and Dustin Honn. Magruder said the oncoming southbound vehicle had two headlights burning. Magruder testified the oncoming southbound vehicle went off the roadway shortly after passing his vehicle. He did not observe the actual collision between Morine's vehicle and Campbell. However, after seeing the car go in the ditch, Magruder returned to the scene of the accident within seconds. Upon returning, Magruder saw a pair of tennis shoes in the center of Limestone Road. Magruder said he had no problem seeing the boys or maneuvering around them as he passed them on Limestone Road.

Harold Morine testified that he observed "something" moving in the middle of the southbound lane of Limestone Road. However, he did not recognize it as a person until the moment of impact. Morine recalled the person his automobile struck was in the middle of the southbound lane of Limestone Road at the time of the accident. Morine did not observe anything within the roadway until 1½ to 2 car lengths immediately before impact. Morine stated he was traveling between 50 and 55 miles per hour at the time of impact. He also testified that he did not have time to honk his horn prior to hitting Campbell. Morine said he frequently drove Limestone Road and was aware that residential homes were located along the road.

Morine also testified that he swerved into the northbound lane and hit the brakes in an effort to avoid striking Campbell. Morine said his evasive efforts failed because Campbell moved to Morine's left, thereby preventing him from avoiding the collision. At the coroner's

inquest, Morine testified he thought his tires locked up because they squealed. At trial, Morine said he swerved, braked, and lost control of the car. Except for his testimony concerning losing control of the car, much of Morine's testimony about his evasive driving maneuvers was impeached at trial. The deputy sheriff who investigated the accident scene testified he found no evidence of braking or skid marks in the impact area. In fact, the deputy testified there were *no* skid marks prior to or after the general area of impact.

Morine testified at trial that his altered headlights were in a condition equivalent to his low beams before the first accident. However, Morine's trial testimony stands in stark contrast to his prior testimony at the coroner's inquest, where he said his headlights had been pushed down so they "shown *right* on the road."

At the conclusion of the five-day bench trial, Campbell's counsel urged the trial court to enter judgment against Morine in the amount of $900,000. Campbell's attorney conceded that Douglas Campbell was negligent in jogging in the wrong lane of Limestone Road. Campbell's counsel asked the trial court to attribute 10% negligence to the decedent's acts. Morine's counsel asserted that the decedent was more than 50% negligent and that the plaintiff had failed to prove any negligence attributable to Morine's driving. Therefore, Morine's attorney urged the trial court to find in his client's favor and enter judgment against Campbell.

The trial court entered judgment under the Illinois Wrongful Death Act against Morine and in favor of Campbell. (Ill. Rev. Stat. 1985, ch. 70, pars. 1, 2.) The trial court found the total damages suffered by Campbell's estate as a result of Morine's negligence to be $250,000. The trial court then found the decedent's negligence to be 35% of the total and reduced the judgment accordingly to $162,500. An additional judgment against Morine of $18,796.08 was entered in favor of Campbell's estate under the Illinois Survival Act. Ill. Rev. Stat. 1985, ch. 110½, par. 27—6.

The trial court in its memorandum of opinion made the following findings:

> "The more difficult of the issues goes to the negligence assignable to the decedent and the defendant. It is mainly occasioned either solely by the negligence of the decedent or that, if there was any negligence on the part of the defendant, then the plaintiff should be denied recovery because the decedent's attributable negligence should greatly exceed 50%. That the decedent was guilty of negligence there can be little or no doubt as the evidence plainly shows that the decedent was jogging

down the highway in the defendant's lane somewhere between the middle of that lane and the center line of the highway contrary to the law that pedestrians should be not only off the highway if possible but on the side of the oncoming traffic. In regard to negligence, a minor is not held to the same standard as an adult but is held to the degree of care which a reasonably careful minor of the age, mental capacity and experience of the decedent would use under circumstances similar to those shown by the evidence, and the same rule applies when a minor decedent is charged having violated a statute.

The minor at the time of the incident was 15 years old being approximately a week shy of his 16th birthday. His companion on that night was one Dustin Honn who was also 15 years of age and upon cross-examination confirmed that the decedent was to his left somewhere in the roadway going with the traffic as opposed to against it. It has always been this Court's observation in the experience of the affairs of life that a great many people of all ages are either unaware of the fact that they are supposed to walk on the side of the road facing and against the oncoming traffic or for whatever reason violate that rule and that such an occurrence should not only be expected but should reasonably be expected. The Court finds no other negligence attributable to the decedent as the testimony plainly indicates that both the decedent and Mr. Honn each checked over their shoulder about 15 times apiece to make sure that a vehicle was not coming upon them from the rear. The Court has no complaint with the decedent's dress as the Court believes he should have been easily seen by the defendant."

Morine argues on appeal that the trial court erred by applying an improper standard in assessing the negligence of the decedent. Morine argues that the appropriate standard of negligence attributable to an almost-16-year-old jogger on a public highway is an adult standard of care. In other words, Morine urges the same duties on the 15-year-old decedent pedestrian that would be placed upon an adult.

■ ■ According to Illinois Pattern Jury Instructions, Civil, No. 10.05 (2d ed. 1971) (IPI Civil 2d No. 10.05), the law is clear that a trial court may consider the age, ability and experience of a minor in determining the level of negligence attributable to him. We note that Campbell's attorney requested the trial court to apply IPI Civil 2d No. 10.05 to the evidence and to review the cases cited in the annotation to that instruction. The record clearly reflects that the trial judge ap-

plied IPI Civil 2d No. 10.05 to the evidence and relied on the cases cited in its annotation as the basis for the court's findings and judgment. Based on our review of the record, we do not find this to be error.

In fact, we find IPI Civil 2d No. 10.05 is the proper statement of the law to be applied in cases just such as this. IPI Civil 2d No. 10.05 contains the following as an introduction: "A minor is not held to the same standard of conduct as an adult." Nowhere within the instruction or comments does it state that a minor above age 14 is held to the same standard of care as an adult. IPI Civil 2d No. 10.05 was published in 1971, and no change in instruction No. 10.05 has ever occurred. IPI Civil 2d No. 10.05 provides in pertinent part:

"The degree of care to be exercised by a minor over the age of seven years is that which a reasonably careful person of the same age, capacity, and experience would exercise under the same or similar circumstances." (Illinois Pattern Jury Instructions, Civil, No. 10.05, Comment, at 57 (2d ed. 1971).)

Therefore, even though a minor could be held to the same standard of care as an adult, he is not held to that standard, unless the trier of fact determines that his age, abilities and experience require application of the adult standard of care.

Our review of this record indicates that the trial court arrived at its judgment after carefully considering the credibility of the witnesses and the sufficiency of the evidence. The trial court made the following findings: (1) Morine drove with defective headlights; (2) he failed to keep a proper lookout; (3) he took no evasive action to avoid striking the decedent; (4) Morine was the proximate cause of Campbell's death; and (5) Morine's testimony was impeached and he was not a credible witness. Based upon our review of the entire record, we find substantial evidence to support the trial court's findings.

Where a case is heard by the trial court sitting without a jury, the reviewing court should presume the trial court considered only such evidence as was competent and proper, unless the contrary is shown. (*In re Application of County Treasurer* (1978), 67 Ill. App. 3d 122, 384 N.E.2d 729.) The trial court has the superior vantage point to assess the credibility of the witnesses. (*M.E. Stein & Co. v. Jones* (1973), 13 Ill. App. 3d 184, 300 N.E.2d 553.) A reviewing court should not substitute its judgment for that of the trial court unless the findings of the trial court are clearly and manifestly against the weight of the evidence. *Lundy v. Boyle Industries, Inc.* (1977), 46 Ill. App. 3d 809, 361 N.E.2d 321.

The trial court articulated a lengthy and carefully reasoned finding of fact before it entered judgment. Only if the trial court abused its discretion would this court disturb its findings and judgment. The result reached by the trial court is clearly supported by the manifest weight of the evidence. We find no abuse of discretion.

For the reasons heretofore stated, the circuit court of Kankakee County is affirmed.

Affirmed.

SLATER, J., concurs.

JUSTICE STOUDER, dissenting:
I must respectfully dissent.

Illinois Pattern Jury Instruction Civil 2d Number 10.05 does not take into account the many cases which have established a range between the ages of 7 and 14 as being the ages of those who are presumed to be held to a minor's standard of care. Generally, the case law holds that when the plaintiff is between the ages of 7 and 14, the defendant must introduce evidence indicating that the plaintiff should not be held to the lower standard of care. However, I have found no cases indicating whether the plaintiff or the defendant must present evidence of the plaintiff's experience, intelligence, and capacity when the plaintiff is over the age of 14. Moreover, it seems the notes accompanying IPI Civil 2d No. 10.05 ignore the case law to hold that instead of there being a range of between 7 and 14 years of age, now any minor over the age of seven is presumed to be held to a child's standard unless otherwise shown.

The only case I found concerning a plaintiff over the age of 14 is *Dickeson v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1965), 73 Ill. App. 2d 5, 220 N.E.2d 43. In *Dickeson,* the court held that when determining the question of due care the factors of experience, intelligence, and capacity must be considered in the case of a minor over 14 years of age. At any rate, if the previously mentioned factors are to be considered, it has yet to be decided who has the burden to present the evidence in favor of or against applying the adult standard of care in these instances.

I agree that a minor is not held to the adult standard of care unless the trier of fact determines that his age, abilities and experience require application of the adult standard. Again, however, this does not answer the question of who has the burden of presenting evidence of either diminished capacity or the intelligence and experience of the

minor. I note that once comparative negligence arises, it is the plaintiff's responsibility to show diminished responsibility. Therefore, would it not follow that a plaintiff over the age of 14, who is no longer within the range of those presumed to be minors, must present evidence establishing diminished responsibility in order to warrant application of the minor's standard of care? The point I wish to make is why does the draft in the instant case seemingly overlook the past case law which utilized a 7- through 14-year-old range?

This is a question without an answer yet in Illinois. There are recent cases from other jurisdictions involving plaintiffs who are 14 years or older. In a North Carolina case involving a pedestrian plaintiff, the court held:

> "[A]fter a youth reaches the age of 14 there is a rebuttable presumption that he possesses the capacity of an adult to protect himself; therefore, *** he is presumptively chargeable with the same standard of care as if he were an adult." (Annot., 32 A.L.R.4th 56, 71 (1984).)

The court further noted that when a youth reaches the age of 14 years he no longer has the benefit of the rule that a person between the ages of 7 and 14 is presumed to be incapable of contributory negligence. *Golden v. Register* (1981), 50 N.C. App. 650, 274 S.E.2d 892. See also Annot., 32 A.L.R.4th 56 (1984).

As applied to the instant case, the 15-year-old plaintiff ought not to have the benefit of the rebuttable presumption in favor of a minor's standard of care which does not apply to individuals over the age of 14. In the record, the trial court seems to indicate that if indeed it was the plaintiff's duty to present evidence of diminished capacity, then its decision was wrong. I think its decision was wrong and a new trial should be granted in this case with instructions pertaining to the plaintiff's obligation to present evidence of diminished capacity in order to apply a minor's standard of care.

Accordingly, I must respectfully dissent.