SECOND DIVISION
December 29, 2009

No. 1-08-1737

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY COLLECTOR for Judgment and Sale Against Lands and Lots Upon Which All or A Part of General Taxes for Two or More Years Are Delinquent Pursuant to Section 21-145 of the Property Tax Code, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Devon Bank, as Trustee u/t/a/ No. 4678, | ) ) | |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 02 CD 2234 |
| Bruce Miller, | ) ) | |
| Respondent-Appellee, | ) ) | |
| and | ) ) | |
| Checkmate Acquisitions, Inc., Michael R. Anchetta, and Renee Mendoza, | ) ) ) | Honorable Susan Fox-Gillis, |
| Respondents). | ) ) | Judge Presiding. |

_____JUSTICE THEIS delivered the opinion of the court:

Petitioner, Devon Bank, appeals from the order of the circuit court of Cook County denying its motion for summary judgment and granting the cross-motion for summary judgment filed by respondent, Bruce Miller. Devon had filed a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)) seeking to set aside a tax deed issued

to respondent Checkmate Acquisitions, Inc., regarding certain property to which Devon held legal title, contending that it had never received any notice of the sale, as required by the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2006)). Miller had responded that he was a bona fide subsequent purchaser of the property for value and that because a lack of jurisdiction did not affirmatively appear on the face of the tax deed proceeding record, under section 2-1401(e) of the Code of Civil Procedure (735 ILCS 5/2-1401(e) (West 2006)), he had a superior right to the property. The circuit court agreed with Miller.

Devon now contends that the tax deed was void because Checkmate failed to conduct a diligent inquiry to determine who owned the property and failed to serve any notice whatsoever of the sale on Devon, the owner of record. Devon maintains that this violation of its constitutional due process rights, in turn, precluded the circuit court from acquiring jurisdiction to order the issuance of the tax deed and rendered the issuance of the deed void. Devon further contends that this void judgment can now be set aside, notwithstanding the fact that Miller may have been a bona fide purchaser, under section 2-1401(f) of the Code of Civil Procedure (735 ILCS 5/2-1401(f) (West 2006)). Devon alternatively contends that under section 2-1401(e) of the Code of Civil Procedure (735 ILCS 5/2-1401(e) (West 2006)), Miller cannot be a considered a bona fide purchaser because the circuit court's lack of jurisdiction to enter the tax deed was apparent from the face of the tax deed proceeding record. For the following reasons, we reverse and remand the cause to the circuit court to set aside the tax deed.

The record discloses the following facts and procedural history relevant to this appeal. The property in question is a vacant lot located at the intersection of Deer Road and North Street

in Palatine, Illinois. Devon Bank has held the legal title to the property since 1982, and Dan Daley was the beneficial owner of the property under a land trust. Daley acquired his beneficial interest in the property for no value from its prior beneficial owner, Sam Prus.

Checkmate Acquisitions, Inc., was the successful bidder for the property at the Cook County Collector's 2001 tax scavenger sale. The circuit court of Cook County subsequently issued a tax deed to Checkmate on March 4, 2003. Checkmate then conveyed the property to Michael R. Anchetta and Rene Mendoza via warranty deed for only nominal consideration on October 10, 2004. However, Anchetta and Mendoza did not record their deed until December 16, 2004. By that time, Anchetta and Mendoza had already conveyed the property to Bruce Miller via warranty deed on November 2, 2004. Miller also recorded his deed, sequentially, on December 16, 2004. Miller paid $90,000 for the property.

Devon commenced the present action on March 4, 2005, by filing a petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2006)). In its amended petition, Devon alleged that although it was the record owner of the property, it received no notice, by publication or otherwise, prior to the issuance of the tax deed. Indeed, Checkmate's application for the tax deed, a copy of which Devon attached to its petition, indicated that the notices required to be given to the record owner of the property pursuant to sections 22-10 through 22-25 of the Property Tax Code had been given to "Marquette Expl" and "PMG Enterprises of Chicago, Inc." An affidavit of Checkmate's attorney, Judd M. Harris, submitted in support of the tax deed stated that "Judd M. Harris or his agent caused a tract index search to be prepared from public tract and computerized records of Cook County, Illinois, said tract index

search having been reduced to a printout, a copy of which is attached hereto and made a part hereof as Exhibit A-1." However, that attached printout was a printout of a search performed from the Chicago Title Insurance Company's computerized tract index. The search indicated that "PMG Enterprise Inc." was the owner of the property.

A disclaimer at the bottom of the printout stated that the document was "not a title insurance policy and should not be relied upon as such." The "Terms and Conditions" of the search stated that it had been prepared from the Chicago Title Insurance Company's proprietary computerized tract indices, rather than the Cook County Recorder of Deeds's grantor-grantee index, and that it would not disclose any recorded instruments not containing the legal description to the property, including deeds or mortgages. The "Terms and Conditions" of the search further stated that "No third party (other than a party making a loan on the land described herein) shall have any right to rely on said search for any purpose whatsoever * * * or under any theory of law whatsoever."

Moreover, the legal description of the property used in the search included several lots, rather than only the property in question. Specifically, the legal description used in the search described the property as "Lot 6 in Block 6 in Percy Wilson's Forest View Highlands." However, the property in question was actually only the north 30 feet of the south 60 feet of Lot 6 in Block 6 in Percy Wilson's Forest View Highlands.

This legal description was apparently taken from another tax deed that had been issued for the parcel of property located immediately to the south of the property in question. Devon attached a copy of that tax deed to its petition. That tax deed, issued April 24, 1989, was for "Lot

6 in Block 6 in Percy Wilson's Forest View Highlands." However, the deed also indicated that the property was identified with Parcel Identification Number ("PIN") 02-09-115-002-0000, and the deed further described the property as the second lot on the east side of Deer Street in Palatine, Illinois. The parcel of property owned by Devon was identified by PIN 02-09-115-001-000 and was the first lot on the east side of Deer Street.

Devon thus sought to declare the tax deed void under section 22-45(4) of the Property Tax Code (35 ILCS 200/22-45(4) (West 2006)) and under the constitutional requirements of due process as articulated in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314-15, 94 L. Ed. 2d 865, 873-74, 70 S. Ct. 652, 657-58 (1950), and its progeny. Devon alleged that the errors in the tax deed proceeding showed a complete lack of diligence on the part of Checkmate in ascertaining its identity as the owner of the property and in failing to give Devon any notice of the tax deed proceedings. Further, Checkmate should have known of Devon's duly recorded interest in the property, which was readily ascertainable from examination of the official public records. Devon asserted that therefore, because Checkmate gave no notice and failed to comply with the constitutional notice requirements of due process and the statutory notice requirements of the Property Tax Code, the circuit court lacked jurisdiction to enter the tax deed. Devon further asserted that this lack of jurisdiction was apparent from the face of the record of the tax deed proceedings.

Devon also asserted that Miller could not be a bona fide purchaser within the meaning of section 2-1401(e) because he was also charged with knowledge of the contents of the public records. He also should have known that Checkmate failed to conduct a diligent inquiry and

1-08-1737

failed to give proper notice as required by the Property Tax Code prior to its application for the tax deed. Therefore, Miller should not have relied on the validity of the tax deed.

Checkmate responded with a motion to dismiss Devon's amended 2-1401 petition. Miller joined that motion. The court ultimately denied the motion to dismiss. Checkmate and Miller then filed answers. Miller also filed a counterclaim against Anchetta and Mendoza for breach of warranty deed. Anchetta and Mendoza also appeared, responded, and filed a counterclaim against Checkmate for breach of warranty deed.

Devon subsequently filed a motion for summary judgment raising substantially the same allegations that it had raised in its amended 2-1401 petition. In support of its motion for summary judgment, Devon attached the same materials that had been attached to its 2-1401 petition. It also attached, *inter alia*, a copy of the warranty deed conveying the property from Checkmate to Anchetta and Mendoza, a copy of the warranty deed conveying the property from Anchetta and Mendoza to Miller, a copy of a title insurance policy procured by Miller, and the discovery depositions of Miller and Joseph Dennis Rotunno. The title insurance policy procured by Miller indicated that Checkmate was the owner of the property, not Anchetta and Mendoza.

In his deposition, Miller testified that he was interested in buying the lot in question, along with several adjacent lots, in order to build on them. He had used a realtor to find the property and had never met Anchetta and Mendoza prior to the transaction. Miller also testified that he left the details of the transaction up to his attorney – he never knew who owned the property previously and never personally examined many of the relevant documents, including the title commitment.

6

Joseph Dennis Rotunno testified that he was also going to purchase the property in question, along with adjacent lots, for the purpose of building a personal residence. Rotunno consulted public records and learned that the property was owned by Devon Bank in a land trust for the benefit of Dan Daly. Rotunno contacted Daly, and in late 2005 or 2006, they agreed that Rotunno would purchase the lot for $5000. After they had agreed, Rotunno learned that the property had been sold at a tax sale.

Miller responded to Devon's motion for summary judgment and filed a cross-motion for summary judgment. Miller argued that he was a bona fide purchaser because the lack of jurisdiction did not appear from the face of the record of the tax deed and he did not have actual knowledge of any defect in those proceedings. Specifically, Miller claimed that Devon had to look to extrinsic evidence to establish the jurisdictional defect in the tax deed proceedings. Miller also argued that the notice procedures used comported with due process. Miller further argued that any non-compliance with notice procedures was "immaterial" because Sam Prus, the beneficial owner of the property under the Devon Bank land trust prior to Dan Daly, admitted in his deposition that he had no intention of paying the taxes on the property to redeem it. Miller also argued that Devon had not shown due diligence in the original action or in bringing its 2-1401 petition, as required by the standard established in Smith v. Airoom, 114 Ill. 2d 209 (1986), because it never took any action to pay the taxes nor did it have any intention of doing so. Next, Miller asserted that there had been no state action in depriving Devon of the property because Checkmate was the instigator of the tax deed proceedings. Finally, Miller contended that because the tax deed proceedings were *in rem*, the lack of notice did not render the tax deed void.

7

Checkmate joined Miller's response and cross-motion for summary judgment and attached several items to its response. These items included requests to admit, in which Devon admitted that from August 1994 until January 2003, Sam Prus was the beneficial owner of the Devon Bank land trust holding legal title to the property. In January 2003, Prus assigned his beneficial interest to a limited liability corporation, whose principals were Patrick "Dan" Daley and Robert Kuzas. Checkmate also attached the deposition of Sam Prus's father, Louis Prus. Louis Prus had been engaged in the business of buying properties at tax sales. Louis had purchased the beneficial interest in the property in question for his son, Sam. Louis explained that he would generally not pay property taxes on a property unless he had a buyer for the property. He further explained that even a tax sale would not concern him because there was a redemption period in which he could still pay the taxes. Ultimately, Sam transferred his beneficial interest in the property in question to Dan Daley, for no value, because he had no buyers for the property and he was starting to incur fines for failure to maintain the lot.

Checkmate also attached additional excerpts from the deposition of Rotunno. Rotunno explained that once he learned that there had been a tax sale of the property, he went to the office of the clerk of the circuit court of Cook County and had the record pulled out of storage so that he could examine it for details regarding the sale.

Following argument, the court denied Devon's motion for summary judgment and granted Miller's cross-motion for summary judgment. The court found that Checkmate's failure to give notice did not deprive the circuit court of jurisdiction over the tax deed proceedings because the court's jurisdiction was *in rem* and obtained by the County Collector filing its

application for a tax sale. The court went on to indicate that its exercise of jurisdiction was perhaps "an erroneous exercise of jurisdiction," but that did not deprive it of jurisdiction. The court further found that it had been under the assumption that the property in question was owned by the owner of the adjacent parcel and that there had been common ownership of the parcels. The court also found that Miller was a bona fide purchaser because the information in the tax deed record would have been sufficient for him to rely upon.

Devon subsequently filed a motion for reconsideration. Devon asserted, *inter alia*, that the court had no basis to conclude that its due process rights were not violated where its ownership interest in the property was properly recorded and it received no notice whatsoever of the tax deed proceedings. Devon also asserted that Miller was could not be a bona fide purchaser where such a miscarriage of due process had occurred.

The court ultimately denied Devon's motion for reconsideration. In so holding, the court indicated that Checkmate had no knowledge that the information regarding ownership of the parcel upon which it had relied was erroneous. Devon then filed this timely appeal.

On appeal, Devon contends that the tax deed was void because Checkmate failed to serve it with any notice of the tax deed proceedings. Therefore, Devon maintains that the circuit court never acquired jurisdiction to enter the tax deed. Devon also maintains that such a void judgment may be attacked at any time and that to allow such a tax deed to stand would unquestionably violate its constitutional rights to due process. Miller responds that the lack of notice was "immaterial" and that procedures set forth in the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2006)) comport with due process. Miller also claims that the only ground upon

9

which a tax deed may be set aside is fraud.[1]

Once the circuit court has issued a tax deed, pursuant to the Property Tax Code (35 ILCS 200/1-1 *et seq.* (West 2006)), it is incontestable except by direct appeal from the order directing the entry of the tax deed or by section 2-1401 petition. 35 ILCS 200/22-45 (West 2006). Section 2-1401 provides that "[r]elief from final orders and judgments, after 30 days from the entry thereof, may be had upon petition as provided in this Section." 735 ILCS 5/2-1401(a) (West 2006). The party seeking to have the tax deed set aside bears the burden of proving the invalidity of the tax deed. Exline v. Weldon, 57 Ill. 2d 105, 111 (1974).

However, a void judgment may be attacked at any time, either directly or collaterally. Sarkissian v. Chicago Board of Education, 201 Ill. 2d 95, 103 (2002). A judgment is void when, *inter alia*, the court lacks jurisdiction over the subject matter or the parties. Sarkissian, 201 Ill. 2d at 103. A void judgment is, from its inception, a complete nullity and without legal effect. Ford Motor Credit Co. v. Sperry, 214 Ill. 2d 371, 380 (2005).

Section 2-1401, in essence, codified the common law means of collaterally attacking judgments. Sarkissian, 201 Ill. 2d at 104-05. However, in so doing, section 2-1401 expressly differentiated petitions collaterally attacking judgments on voidness grounds from all other types of collateral attacks, as for example, those alleging newly discovered facts or fraudulent concealment. 735 ILCS 5/2-1401(f) (West 2006); Sarkissian, 201 Ill. 2d at 104. Specifically,

---

[1]Miller also asserts that there was no state action in the tax deed proceedings and that, therefore, due process concerns are not implicated. As this argument is contradicted by United States Supreme Court precedent, we will address it no further. See, e.g., Jones v. Flowers, 547 U.S. 220, 226, 164 L. Ed. 2d 415, 425, 126 S. Ct. 1708, 1713 (2006).

1-08-1737

section 2-1401(f) provides that "Nothing contained in this Section affects any existing right to relief from a void order or judgment, or to employ any existing method to procure that relief." 735 ILCS 5/2-1401(f) (West 2006). Section 2-1401(f) thus provides the means for attacking void judgments collaterally. Sarkissian, 201 Ill. 2d at 104. Further, a section 2-1401(f) petition alleging voidness is exempt from the general requirements of section 2-1401 petitions, as articulated in Smith v. Airoom, 114 Ill. 2d 209 (1986), such as alleging a meritorious defense and due diligence. Sarkissian, 201 Ill. 2d at 104.

Under section 22-45 of the Property Tax Code, which works in conjunction with section 2-1401, there are four grounds upon which relief may be had from a tax deed via 2-1401 petition:

"(1) proof that the taxes were paid prior to the sale

(2) proof that the property was exempt from taxation;

(3) proof by clear and convincing evidence that the tax deed had been procured by fraud or deception by the tax purchaser or his or her assignee; or

(4) proof by a person or party holding a recorded ownership or other recorded interest in the property that he or she was not named as a party in the publication notice as set forth in Section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve that person or party with the notices required by Sections 22-10 through 22-30." 35 ILCS 200/22-45 (West 2006).

To take away a person's property without compensation has been described as "shocking," but there are important policy concerns and property interests on both sides of the equation. See,

11

e.g., *In re* Edwards, 962 F.2d 641, 645 (7th Cir. 1992) (weighing policy concerns and due process rights of a property owner who had received no notice of a bankruptcy sale against those of a bona fide purchaser of the property). Over the past half-century, the Illinois legislature has struck the balance between competing policies of ensuring the propriety of tax deed orders by permitting collateral challenges to those orders, and preserving the marketability of tax deeds and returning property to the tax rolls, in different ways. *In re* Application of County Collector, 217 Ill. 2d 1, 16 (2005), *rev'd on other grounds*, 225 Ill. 2d 208 (2007) (hereinafter Lowe I). Starting in the 1950s, the legislature struck that balance in favor of marketability of tax deeds by making a challenge to a tax deed relatively difficult. See Lowe I, 217 Ill. 2d at 18. Then, recognizing the potential for fraud, the legislature began shifting the balance back toward allowing more relief. See In re Application of County Treasurer of Cook County, 92 Ill. 2d 400, 407 (1982) (hereinafter Congua). In general, collateral attacks were limited to the grounds of fraud and coercion. Lowe I, 217 Ill. 2d at 20. Thus, until the 1990s, subsections (1) through (3) of section 22-45 were the only means to procure relief from tax deeds, and subsection (3), fraud, was most commonly alleged as a means for procuring relief. See Lowe I, 217 Ill. 2d at 20-21. Those grounds are addressed as general section 2-1401 petitions. Lowe I, 217 Ill. 2d at 20; see also In re County Treasurer, 347 Ill. App. 3d 769, 774-75 (2004) (section 2-1401 petition seeking relief from tax deed on grounds of fraud under section 22-45(3) subject to due diligence requirement).

However, voidness of a tax deed, as distinguished from other defenses related to notice, was also available as a means to collaterally attack a tax deed. Congua, 92 Ill. 2d at 408. Then, in 1993, the General Assembly enacted subsection (4) as an additional means for collateral relief

from a tax deed to address situations where there was a lack of any notice whatsoever. Lowe I, 217 Ill. 2d at 21-22. This enactment, along with section 2-1401(f), effectively codifies the procedure for collaterally attacking a tax deed on the basis that it is void due to lack of any notice whatsoever. See Lowe I, 217 Ill. 2d at 27; Sarkissian, 201 Ill. 2d at 104-05. Our research failed to reveal any cases addressing a petition to invalidate a tax deed on these grounds. Section 22-45(4) was not at issue in Lowe (see Lowe I, 217 Ill. 2d at 22), and it was not yet in effect at the time of the last published opinion of this court on a similar issue (see, e.g., *In re* Application of County Collector, 202 Ill. App. 3d 405, 412 (1990) (hereinafter New York Guardian); see also Lowe I, 217 Ill. 2d at 27 (explaining that the codification of 22-45(4) prevents the situation at issue in New York Guardian)). Thus, the application of sections 22-45(4) and 2-1401(f) is an issue of first impression in this court. We will first address whether Devon has satisfied the standard for relief under section 22-45(4).

Once again, section 22-45(4) allows relief from a tax deed where the petitioner provides proof that he held a recorded interest in the property, he was not named as a party in the publication notice as set forth in section 22-20, and that the tax purchaser or his or her assignee did not make a diligent inquiry and effort to serve him with the notices required by sections 22-10 through 22-30. 35 ILCS 200/22-45 (West 2006). Here, the record clearly shows that Devon was the record owner of the property, but received no notice whatsoever, by publication or otherwise, of the tax sale, expiration of the redemption period, or tax deed proceedings. The only issue is whether Checkmate made a "diligent inquiry and effort to [ascertain the identity of and to] serve that person or party" with the requisite notices.

13

The record discloses that in order to determine the identity of the record owner of the lot in question, Checkmate's attorney searched the Chicago Title Insurance Company's proprietary computerized tract index using an incorrect legal description of the property. This was not a diligent inquiry or effort for several reasons. First, Checkmate never consulted the actual public records to determine the name and address of the party entitled to notice. Interested parties – whether legal owners or land trust beneficiaries – whose names and addresses can readily ascertained from public records have a constitutional right to notice of tax deed proceedings, and the failure of the tax sale purchaser to consult the public records to make this determination constitutes a lack of diligence. In re Application of County Treasurer, 216 Ill. App. 3d 162, 170-71 (1991) (hereinafter Huffman).

Second, Checkmate relied upon a tract index search. The tract index is an unofficial index, upon which a party conducting a title search should never rely. See Landis v. Miles Homes, Inc., 1 Ill. App. 3d 331, 334-35 (1971); see also Ward F. McDonald & Trent T. Seegmiller, Ward on Title Examinations §11.7 (2005). The prospective purchaser of real estate is only chargeable with knowledge of what appears in the grantor-grantee index. Skidmore, Owings & Merrill v. Pathway Financial, 173 Ill. App. 3d 512, 514 (1988); Landis, 1 Ill. App. 3d at 335. Further, the tract index upon which Checkmate relied was not even the official one but, rather, the computer database of the Chicago Title Insurance Company. Although Checkmate's attorney in the tax deed proceeding stated in his affidavit that he had searched the public records, the attached documents clearly showed that he had not.

This exact same scenario was present in New York Guardian. In that case, the attorney

14

for the tax deed petitioner had represented to the court that he had checked the public records to determine ownership of the parcel in question. New York Guardian, 202 Ill. App. 3d at 412. However, he had instead relied upon Chicago Title Insurance Company's computerized tract index, neglecting to independently check the official records of the county recorder and resulting in a total lack of notice to the property owner. New York Guardian, 202 Ill. App. 3d at 412. The court held that, "[a]llowing the party at fault to then benefit from his own misconduct is absurd" and that a party with a properly and publicly recorded interest in land should not have that interest terminated without notice. New York Guardian, 202 Ill. App. 3d at 412. In so holding, the court recognized that "[i]t may be the case that CTIC searches are customarily used in tax deed proceedings, and * * * that these searches are accurate 99.5% of the time." New York Guardian, 202 Ill. App. 3d at 413. However, the court also observed that "[w]hen the tax deed petitioner substitutes a Chicago Title Insurance Company search for his or her own search of the official public records, however, the [tax deed] petitioner should bear the risk of the type of omission that occurred here." New York Guardian, 202 Ill. App. 3d at 413-14. The court thus reversed the circuit court's denial of the property owner's section 2-1401 petition to vacate the tax deed, but because section 22-45(4) was not yet in existence, the court relied upon its equitable powers to do so. New York Guardian, 202 Ill. App. 3d at 416.

Third, and more egregious than in New York Guardian, Checkmate did not use a correct legal description of the property when it conducted the Chicago Title Insurance Company tract index search. The description of the property it used was overly broad and covered adjacent lots. Although that description was used in the PMG tax deed for the adjacent parcel, when taken in

15

the context of the entire PMG deed, it was clear that the deed only referred to the adjacent lot, the "-002" parcel, and the error in the legal description should have been apparent. Moreover, the numerous disclaimers on the Chicago Title Insurance Company tract search printout expressly stated that the search should not be relied upon as a guarantee or opinion of title, that the search was only as accurate as the information provided and used to conduct the search, and that duly recorded items, including deeds and mortgages, that did not contain the legal description to the property would not be shown by the tract index search. Thus, the Chicago Title Insurance Company tract index search should not have been relied upon by Checkmate under these circumstances.

In conclusion, we find the rationale of New York Guardian instructive, where the attorney for Checkmate failed to conduct a diligent inquiry to determine ownership of the parcel, resulting in a total lack of notice to the record owner. Accordingly, we find that where, as here, numerous errors in the process of determining the identity of the record owner of the property result in a total lack of notice to the record owner, the record owner is entitled to relief from the tax deed under section 22-45(4).

Devon also argues that this lack of notice was a violation of its due process rights. We agree. A lack of notice and diligence under section 22-45(4) is, in essence, a violation of due process. The due process clause of the fourteenth amendment to the United States Constitution requires that before the courts of any state may assert jurisdiction over a defendant, or over a defendant's property, there must be a constitutionally valid basis for the assertion of jurisdiction and adequate notice must be given to the defendant. See, e.g., Pennoyer v. Neff, 95 U.S. (5 Otto)

714, 724-25, 24 L. Ed. 565, 569 (1877). Due process requires, at a minimum, that any "deprivation of life, liberty, or property by adjudication be preceded by notice and the opportunity for hearing appropriate to the nature of the case." Mullane, 339 U.S. at 313, 94 L. Ed. at 872-73, 70 S. Ct. at 656-57.

Put another way, a judgment is not valid unless the court has jurisdiction over the subject matter of the case and over the parties involved therein. State Bank of Lake Zurich v. Thill, 113 Ill. 2d 294, 308 (1986). A judgment entered without such jurisdiction is void and, once again, may be attacked at any time, either directly or collaterally. Thill, 113 Ill. 2d at 309 (citing what is now section 2-1401(f) of the Code of Civil Procedure). Here, there is no question that the circuit court had the subject matter jurisdiction to enter the tax deed. See, e.g., In re Application of Cook County Collector, 228 Ill. App. 3d 719, 731 (1992) (hereinafter Elsie Bee). Rather, the issue presented is whether the court properly acquired jurisdiction over Devon, Devon's property, or Devon's interest therein.

Unless the defendant enters a general appearance, a court can acquire personal, or *in personam*, jurisdiction only where there has been service of process on a defendant in the manner prescribed by statute. Thill, 113 Ill. 2d at 309; see also *In re* Possession & Control of the Commissioner of Banks & Real Estate, 327 Ill. App. 3d 441, 463-64 (2001), citing, *inter alia*, 3 R. Michael, Illinois Practice §§2.1 & 7.1 (1989) and McDonald v. Mabee, 243 U.S. 90, 37 S. Ct. 343, 61 L. Ed. 608 (1917).[2] Illinois courts have often held that tax sale proceedings are *in rem*

___

[2]Although this court's decision in Elsie Bee states that the failure to give notice to a land trust beneficiary or a tenant farmer did not deprive the court of personal jurisdiction, the legal title holder did receive notice; therefore, jurisdiction was proper. Elsie Bee, 228 Ill. App. 3d at

1-08-1737

and that, therefore, once the county collector files the application for judgment, the circuit court retains jurisdiction to enter all orders supplemental to the tax sale. See, e.g., Vulcan Materials Co. v. Bee Construction, 96 Ill. 2d 159, 165 (1983).

However, a court's acquisition of *in rem* or *quasi-in rem* jurisdiction over property or a defendant's interest in property is no different for purposes of due process. Shaffer v. Heitner, 433 U.S. 186, 212, 53 L. Ed. 2d 683, 703, 97 S. Ct. 2569, 2584 (1977). Although due process does not require actual notice before the government may take an owner's property, it does require some notice. See, e.g., Jones v. Flowers, 547 U.S. 220, 226, 164 L. Ed. 2d 415, 425, 126 S. Ct. 1708, 1713 (2006). That notice must be " 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " Jones, 547 U.S. at 226, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713-14, quoting Mullane, 339 U.S. at 314, 94 L. Ed. at 873, 70 S. Ct. at 657. For example, in Mullane, the Supreme Court held that although publication notice may constitute sufficient notice under certain circumstances, publication notice is insufficient to apprise "known persons whose whereabouts [were] also known of substantial property rights." Mullane, 339 U.S. at 320, 94 L. Ed. at 876, 70 S. Ct. at 660.

Here, where it is undisputed that Devon, the legal owner of record, received no notice whatsoever, Devon's due process rights were obviously violated. See, e.g., Jones, 547 U.S. at 226, 164 L. Ed. 2d at 425, 126 S. Ct. at 1713. The statutory notice requirements set forth in the Property Tax Code, when followed, do comport with due process, as Miller suggests. See, e.g.,

731.

18

In re Application of County Collector, 225 Ill. 2d 208, 225 (2007) (hereinafter Lowe II)

(explaining that the notice provisions set forth in the Property Tax Code are far more

comprehensive that the minimum standards of due process require). However, here, those notice

procedures were simply not followed. Further, this total lack of notice means that the circuit

court never acquired personal jurisdiction over Devon, even though this action could be

described as *in rem* or *quasi-in rem*. See, e.g., Commissioner of Banks & Real Estate, 327 Ill.

App. 3d at 466. This, in turn, means that the tax deed was void.

We must now determine what impact this has on Miller's rights as a subsequent

purchaser for value. Miller contends that he is a bona fide purchaser because he did not have

actual notice of Devon's interest. Miller also contends that a lack of jurisdiction was not

apparent from the face of the tax deed proceedings and that it was acceptable for Checkmate to

rely on the Chicago Title Insurance Company computerized tract index search.

Section 2-1401(e) provides that:

"[u]nless a lack of jurisdiction affirmatively appears from the record proper, the

vacation or modification of an order or judgment pursuant to the provisions of this

Section does not affect the right, title or interest in or to any real or personal

property of any person, not a party to the original action, acquired for value after

the entry of the order or judgment but before the filing of the petition, nor affect

any right of any person not a party to the original action under any certificate of

sale issued before the filing of the petition, pursuant to a sale based on the order or

1-08-1737

judgment."  735 ILCS 5/2-1401(e) (West 2006).[3]

Thus, section 2-1401(e) constitutes a restriction further limiting the availability of collateral relief under section 2-1401 generally where bona fide purchasers of land are concerned.  See Elsie Bee, 228 Ill. App. 3d at 734.

The goal of section 2-1401(e) is to protect bona fide purchasers for value.  Elsie Bee, 228 Ill. App. 3d at 734.  Illinois has long had a policy of protecting bona fide purchasers.  Mid-America Federal Savings & Loan Ass'n v. Kosiewicz, 170 Ill. App. 3d 316, 327 (1988).  However, in order to be entitled to that protection from an order setting aside a tax deed, the circuit court's lack of jurisdiction to enter the deed cannot have appeared on the face of the record at the time the purchaser acquired its interest in the property.  JoJan Corp. v. Brent, 307 Ill. App. 3d 496, 505 (1999); Elsie Bee, 228 Ill. App. 3d at 734.

Put another way, a purchaser is not a bona fide purchaser if he had constructive notice of an outstanding title or right in another person.  Elsie Bee, 228 Ill. App. 3d at 734.  In addition, a purchaser having notice of facts that would put a prudent person on inquiry is chargeable with knowledge of other facts the person might have discovered by diligent inquiry.  Elsie Bee, 228 Ill. App. 3d at 734.  A purchaser is placed on "inquiry notice" when facts revealed in the title search process would cause a reasonable individual to think twice about completing the transaction.  See, e.g., Ambrosius v. Katz, 2 Ill. 2d 173, 182 (1954); see also W. McDonald & T.

_____

[3]At oral argument in this cause, Devon also attempted to argue, for the first time, that section 2-1401(e) was unconstitutional as applied.  However, because Devon failed to raise that argument in its brief or the court below, that argument is forfeited.  See, e.g., International Union of Operating Engineers, Local 150 v. Lowe Excavating Co., 225 Ill. 2d 456, 491 (2006); see also 210 Ill. 2d R. 341(h)(7).

Seegmiller, Ward on Title Examinations §11.4 (1997). In addition, as we explained above, the purchaser is charged with notice of all items in the chain of title appearing in the grantor-grantee index maintained by the recorder of deeds. Landis, 1 Ill. App. 3d at 334. In other words, if the tax deed grantees had notice of the owner's claim to the property, then they stand in no better position than the tax purchaser and are subject to relief against them. Elsie Bee, 228 Ill. App. 3d at 735.

Further, although the section 2-1401 petitioner bears the burden to prove the facts which justify relief, after that case has been made, the burden then shifts to the party claiming to be a bona fide purchaser to prove that he was a bona fide purchaser. Elsie Bee, 228 Ill. App. 3d at 735. Thus, it was Miller's burden to prove that he was a bona fide purchaser and that Devon was not entitled to relief. Elsie Bee, 228 Ill. App. 3d at 735.

Here, the record discloses that at the time Miller contracted to purchase the property from Anchetta and Mendoza, Anchetta and Mendoza did not have a legally recorded ownership interest in the property. To that end, Miller's title insurance policy actually stated that Checkmate was the owner of the property at the time. These facts should have put Miller on notice that there was an issue to be resolved. These facts also would have put a reasonable purchaser on "inquiry notice," indicating that he needed to make further inquiry regarding the title to the property. See Ambrosius, 2 Ill. 2d at 182; see also W. McDonald & T. Seegmiller, Ward on Title Examinations §11.4 (1997). Miller was thus bound to investigate the nature and the extent of not only Anchetta and Mendoza's interests in the property, but also of Checkmate's interest in the property.

In addition, Miller's chain of title inquiry should have also revealed to him that Checkmate purchased the property at a tax sale. This would have placed Miller on inquiry notice to investigate the record of the tax deed proceeding, much in the same way that Joseph Dennis Rotunno did during his endeavor to purchase the property. See, e.g., W. McDonald & T. Seegmiller, Ward on Title Examinations §§11.11 & 11.19 (1997) (discussing when a title searcher would have to check with offices other than the recorder's office). An investigation of the tax deed proceeding record would have, in turn, disclosed numerous deficiencies, including that Checkmate never conducted a search of the public records to determine ownership of the parcel and that Checkmate relied on a tract index search based on an incorrect legal description. Where the purchaser's inquiry reveals the possibility that the trial court may not have had personal jurisdiction to enter a judgment necessary to his taking good title to property, that purchaser cannot be a bona fide purchaser unless the purchaser has resolved those issues. See, e.g., Bank of New York v. Unknown Heirs & Legatees, 369 Ill. App. 3d 472, 477 (2006) (holding that under section 2-1401(e), where judgment of foreclosure was based on publication notice to "unknown heirs and legatees," but record in foreclosure proceeding also suggested that there were known heirs, the foreclosure judgment was void for lack of personal jurisdiction as a result of defective notice and the subsequent purchaser was not a bona fide purchaser).

Moreover, Miller presented no evidence that he did any of the things that a reasonable, prudent person would do prior to purchasing a piece of real estate, aside from the fact that he viewed the property and found it to be vacant. Although Miller purchased a title insurance policy, it indicated that his sellers, Anchetta and Mendoza, were not owners of the property.

1-08-1737

Therefore, we find that Miller did not prove that he was a bona fide purchaser for value. See

Elsie Bee, 228 Ill. App. 3d at 735. Because we find Miller was not a bona fide purchaser, he is

not entitled to protection of his interest over that of Devon.

For these reasons, we reverse the judgment of the circuit court, and remand this cause

with directions for the circuit court to set aside the tax deed under section 2-1401(f) of the Code

of Civil Procedure and section 22-45(4) of the Property Tax Code.

Reversed and remanded.

CUNNINGHAM, P.J., and HOFFMAN, J., concur.

*In re* **APPLICATION OF THE COUNTY COLLECTOR for Judgment and Sale Against Lands and Lots Upon Which All or Part of General Taxes for Two or More Years Are Delinquent Pursuant to Section 21-145 of the Property Tax Code,**

**(Devon Bank, as Trustee u/t/a No. 4678**

> **Petitioner-Appellant,**
>
> **v.**

**Bruce Miller,**

> **Respondent-Appellee,**
>
> **and**

**Checkmate Acquisitions, Inc., Michael R. Anchetta, and Renee Mendoza,**

> **Respondents).**

---

### No. 1-08-1737

**Appellate Court of Illinois
First District, Second Division**

**Filed: December 29, 2009**

---

### JUSTICE THEIS delivered the opinion of the court.

**Cunningham, P.J., and Hoffman, J., concur.**

---

**Appeal from the Circuit Court of Cook County,
Honorable Susan Fox-Gillis, Judge Presiding.**

---

| | |
|---|---|
| For PETITIONER-<br>APPELLANT | Mark R. Davis<br>Patricia Quinn Ford<br>O'Keefe, Lyons, & Hynes, LLC<br>30 N. LaSalle St., Suite 4100<br>Chicago, IL 60602 |
| For RESPONDENT-<br>APPELLEE,<br>Bruce Miller | Ronald A. Damashek<br>Melissa L. Lettiere<br>Stahl Cowen Crowley Addis LLC<br>55 W. Monroe St., Suite 1200<br>Chicago, IL 60603 |