In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2880

IN RE:

KEITH SMITH and DAWN SMITH,

*Debtors.*

KEITH SMITH and DAWN SMITH,

*Plaintiffs-Appellants,*

*v.*

SIPI, LLC and MIDWEST CAPITAL INVESTMENTS, LLC,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 C 06534—**Ronald A. Guzmán**, *Judge.*

ARGUED APRIL 13, 2010—DECIDED JULY 27, 2010

Before WILLIAMS, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* It stands to reason that people facing bankruptcy might also have tax problems, so federal courts often apply the bankruptcy statutes in

tandem with other sources of tax law. This case presents a puzzling tension between the bankruptcy fraudulent transfer statute, 11 U.S.C. § 548, and Illinois law on the "tax sale" of a debtor's property.

Section 548 allows debtors to avoid certain transfers of their property to creditors, but only for a limited time after those transfers are "perfected" against a "bona fide purchaser" ("BFP"). 11 U.S.C. § 548(d)(1). Under the Illinois tax sale process, a "taxbuyer" may acquire a debtor's real property by paying off delinquent real estate taxes, but not before the debtor's "period of redemption" on the property expires and the taxbuyer obtains and records a "tax deed."

Here is the puzzle: when in the Illinois tax sale process—the expiration of the period of redemption or the issuance and recording of the tax deed—is the transfer of the debtor's property to the taxbuyer "perfected" for § 548 purposes?

The debtors, Keith and Dawn Smith, argue that perfection does not occur before the issuance and recording of the tax deed, and in their Chapter 13 bankruptcy proceeding, they attempted to avoid a tax deed to their home that was issued to the taxbuyer within the time limits of § 548. The bankruptcy court, as affirmed by the district court, disagreed with the Smiths, finding instead that the tax sale of their home was perfected upon the expiration of the period of redemption, and on that basis dismissed their § 548 fraudulent transfer claim.

We conclude that the Smiths have the better argument. Under Illinois law, a taxbuyer's property interest is not

perfected against a BFP until the recording of the tax deed. Prior to recording, even though the period of redemption may have expired, the debtor still has title to and owner-ship rights in the property and so potentially could con-vey to a BFP a property interest superior to the tax-buyer's interest. Accordingly, we reverse the dismissal of the Smiths' § 548 fraudulent transfer claim and remand for further proceedings.

## I. Background

### A. The Tax Sale of the Smith Property

The Smiths have lived in a home in Joliet, Illinois for several years, although it was not until 2004 when Dawn Smith inherited record title to the property. At the time of her inheritance, the property was subject to a state tax lien for unpaid real estate taxes for the 2000 tax year, *see* 35 ILCS 200/21-75, a delinquency that authorized the county collector to auction off the unpaid property taxes at the annual "tax sale," *see id*. § 21-205. At an Illinois tax sale, prospective buyers bid on the property based on the lowest penalty percentage that they will accept from the property owner in order to redeem the property. *See id*. § 21-215. So in effect, the auction goes to the "lowest bidder," who, in exchange for paying off the delinquent property taxes, receives a "certificate of pur-chase" from the county. *See id*. §§ 21-240, 21-250. This certificate doesn't convey title to the property, but it may enable the taxbuyer to acquire title at a later date by petitioning for a tax deed. A tax sale for the Smith property was held on November 2, 2001, and a certificate

of purchase was issued to the successful bidder, SIPI, LLC (actually, SIPI's predecessor in interest, a non-party to this appeal).

With the completion of the tax sale, the clock started running on a two-year, six-month "period of redemption" during which the owner could redeem the Smith property by paying off the delinquent taxes plus interest and penalties. *See id.* §§ 21-350(b), 21-355. No one ever redeemed the property, and the redemption period expired on November 1, 2004. (Although not clear from the record, SIPI apparently extended the redemption period to three years after the tax sale, as it was entitled to do under 35 ILCS 200/21-385.)

The expiration of the redemption period cleared the way for SIPI to use its certificate of purchase to obtain a tax deed to the Smith property. Under the Illinois tax deed process, between six and three months before the redemption period expires, the taxbuyer may petition the Illinois circuit court to issue a tax deed if the property is not redeemed. *Id.* § 22-30. The taxbuyer must comply with an array of procedural safeguards, including providing notice of the tax deed proceedings to all "occupants, owners and persons interested in the property." *Id.*; *see also id.* §§ 22-10, 22-15, 22-20, 22-25 (describing the content, form, and necessary recipients of notice of the expiration of the redemption period and the tax deed petition). If the taxbuyer observes all of these procedures and the debtor fails to redeem the property, the circuit court "shall" issue the taxbuyer a tax deed to the property. *Id.* § 22-40(a). The taxbuyer

must record the tax deed in the county recorder's office, *id.* § 22-60, and failure to do so within one year after the expiration of the redemption period renders the taxbuyer's rights "absolutely void," *id.* § 22-85.

SIPI timely petitioned the Will County circuit court for a tax deed to the Smith property, affirming that it had satisfied all of the tax sale procedural requirements. The county clerk issued the tax deed on April 15, 2005, and SIPI recorded the deed on May 19, 2005. It was at that point, more than three years after the 2001 tax sale, that SIPI finally had title to the Smith property in the form of a tax deed. (SIPI subsequently conveyed its title to Midwest Capital Investments, LLC ("MCI"), also a defendant in this case.) At earlier points in the tax sale process, Dawn Smith retained a title in her home that was superior to SIPI's property interests; although SIPI's certificate of purchase was a cloud on Dawn's title, she had every right to remove that cloud by paying off the delinquent property taxes—at least, up until the redemption period expired.

Much hazier were the parties' relative property rights *after* the expiration of the redemption period but *before* the issuance and recording of SIPI's tax deed. In this twilight zone of title, Dawn was still the record title holder, but her title was essentially at the mercy of SIPI, which could acquire superior title simply by pursuing its statutory right to obtain a tax deed.

So of course, one can predict what this case background is leading to: some critical event after the expiration of the redemption period but before SIPI obtained

and recorded its tax deed. That event was April 13, 2005, the beginning of a two-year look-back period from the Smiths' bankruptcy petition during which fraudulent transfers may be avoided under 11 U.S.C. § 548(a)(1).

### B.  The Smiths' Bankruptcy Petition and Proceedings Below

On April 13, 2007, the Smiths filed for Chapter 13 bankruptcy and, in connection with that proceeding, filed an adversary complaint against SIPI and MCI seeking to avoid the tax deed to their home as a fraudulent transfer under 11 U.S.C. § 548. The bankruptcy court, as affirmed by the district court, dismissed the adversary complaint for failure to state a claim. In order to be avoidable under § 548, a transfer must occur "on or within 2 years before the date of the filing of the petition," *id.* § 548(a)(1), and such a transfer is deemed to occur when it is "perfected" against a "bona fide purchaser," *id.* § 548(d)(1). The bankruptcy and district courts concluded that the transfer of the Smith property was perfected upon the expiration of the redemption period, not the later issuance and recording of SIPI's tax deed. Since the November 1, 2004, expiration of the redemption period was more than two years before the Smiths' April 13, 2007, bankruptcy petition, the bankruptcy and district courts held that the Smiths could not use § 548 to set aside the tax deed to their home. The Smiths appeal.

## II. Analysis

Because the Smiths' adversary proceeding originated in the bankruptcy court, rather than the district court, we review the bankruptcy court's decision. *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). The bankruptcy court dismissed the adversary complaint based on a pure legal question—the application of the bankruptcy fraudulent transfer statute, 11 U.S.C. § 548, to the Illinois tax sale process—so our review is de novo, *Ojeda*, 599 F.3d at 716.

Section 548 empowers the bankruptcy trustee to avoid certain transfers out of the bankruptcy estate, including one for which the debtor "received less than a reasonably equivalent value" for the property and thus "became insolvent as a result of such transfer." 11 U.S.C. § 548(a)(1)(B)(i)-(ii)(I). (Section 522(h) gives debtors-in-possession like the Smiths the same § 548 avoidance powers with respect to involuntary transfers of certain exempt properties, such as homesteads.) The trustee's avoidance powers are limited by a two-year look-back period; the transfer must have occurred "on or within 2 years before the date of the filing of the petition" for bankruptcy. *Id.* § 548(a)(1). For the purpose of determining whether a transfer occurred within this two-year avoidance window, the statute provides:

> a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee. . . .

*Id.* § 548(d)(1). By referring to the time of "perfection," the statute of course does not mean the moment when the transferee has a literally "perfect" property interest but when, under governing state law, the transferee's interest is perfected relative to a potential BFP. *See Frierdich v. Mottaz*, 294 F.3d 864, 867 (7th Cir. 2002) (applying state law to determine when a property transfer occurred within the meaning of § 548(d)(1)). So the issue in this case is when, under Illinois law, was SIPI's tax-buyer interest in the Smith property so perfected that the Smiths could no longer convey a "superior" interest to a BFP? If perfection happened upon the November 1, 2004, expiration of the redemption period, the Smiths' fraudulent transfer claim fails, since that date was more than two years before their April 13, 2007, bankruptcy petition. If perfection did not occur until the May 19, 2005, recording of SIPI's tax deed, or even the April 15, 2005, issuance of the deed, the Smiths will have satisfied the timing element of their fraudulent transfer claim.

We have not previously dealt with this fascinating intersection between § 548 and Illinois tax sales, but several Illinois bankruptcy courts have. For the most part, these courts have reasoned that the expiration of the redemption period, rather than the issuance or re-cording of the tax deed, is the operative transfer for § 548 purposes. *See In re McKeever*, 132 B.R. 996, 1010 (Bankr. N.D. Ill. 1991); *In re Bequette*, 184 B.R. 327, 336-37 (Bankr. S.D. Ill. 1995) (citing *McKeever* with approval); *In re Butler*, 171 B.R. 321, 324-26 (Bankr. N.D. Ill. 1994) (same); *In re Moureau*, 147 B.R. 441, 442-43 (Bankr. N.D. Ill. 1992) (same). *But see In re McKinney*, 341 B.R. 892, 897-98 (Bankr. C.D. Ill.

2006) (suggesting that the expiration of the redemption period is less important than the issuance of the tax deed with respect to the debtor's property rights). Notably, though, these courts did not have to decide whether the transfer was "perfected" on or after the expiration of the redemption period because expiration occurred within the avoidance window of § 548. *E.g.*, *McKeever*, 132 B.R. at 1008-10 (recognizing a § 548 claim where the redemption period expired within the avoidance window but the earlier tax sale did not). The Smiths' § 548 claim presents the novel scenario in which the issuance of the tax deed falls within the avoidance window but the redemption period does not, making it critical whether SIPI's taxbuyer interest was perfected upon the expiration of the redemption period. So we consider this case to be one of first impression.

In deciding when a taxbuyer's interest is "perfected" against a BFP, we find guidance in the Illinois Property Tax Code, which is "a comprehensive statute regulating the assessment and collection of taxes, the forfeiture of property for the nonpayment of taxes, the sale of property to satisfy delinquent taxes, and the redemption of property upon payment of delinquent taxes, interest and costs associated with the sale of the property." *In re Application of County Treasurer*, 824 N.E.2d 614, 619 (Ill. 2005). These comprehensive statutes describe the scope of the taxbuyer's rights in the debtor's property at various stages of the tax sale process, and notably for our purposes, they highlight the importance of recording the tax deed in order to perfect the taxbuyer's interest.

The tax sale of the debtor's property only entitles the taxbuyer to a certificate of purchase, 35 ILCS 200/21-250, which "has no effect on the delinquent property owner's legal or equitable title to the property," *In re Application of County Treasurer*, 914 N.E.2d 1158, 1165 (Ill. App. Ct. 2009) (citation omitted). It is not until the expiration of the debtor's redemption period and issuance of the tax deed that the taxbuyer acquires title and the right to be placed "in possession of the property." 35 ILCS 200/22-40(c). Yet even the issuance of the tax deed is not alone sufficient to secure the taxbuyer's rights against a BFP, since the tax deed "shall not be of any force or effect until after it has been recorded in the office of the recorder." *Id.* § 22-60. If the taxbuyer fails to record within one year after the redemption period expires, the deed "shall . . . be absolutely void with no right to reimbursement." *Id.* § 22-85. These statutes make clear that it is the recording of the tax deed, not the earlier expiration of the redemption period, that marks the "perfection" of the taxbuyer's interest against a "bona fide purchaser." 11 U.S.C. § 548(d)(1).

Treating the recording of the tax deed as the moment of perfection for § 548 purposes is consistent with the general rule under Illinois law that deeds are perfected against subsequent purchasers only when recorded. Under the Illinois Conveyances Act's recording statute, "All deeds, mortgages and other instruments of writing which are authorized to be recorded, shall take effect and be in force from and after the time of filing the same for record, and not before, as to all creditors and subsequent purchasers, without notice . . . ." 765 ILCS 5/30;

*see also In re Application of Cook County Treasurer*, 706 N.E.2d 465, 470 (Ill. 1998) (concluding that a grantee's failure to record a real property deed subordinated his rights to those of a subsequent BFP without notice). Since the Illinois tax sale process employs such a "deed" to convey "merchantable title" to the debtor's property, 35 ILCS 200/22-55, the taxbuyer's interest is properly per-fected against subsequent purchasers through recording.

Giving us pause, though, is the requirement that a subsequent purchaser take "without notice" of a deed to have BFP status. 765 ILCS 5/30; *see also In re Application of County Collector*, 921 N.E.2d 462, 476 (Ill. App. Ct. 2009) ("[A] purchaser is not a bona fide purchaser if he had constructive notice of an outstanding title or right in another person."). Tax deeds are issued only after extensive tax sale proceedings that are a matter of public record. The "tax sale books" maintained by county recorders show sales of property for unpaid taxes, 55 ILCS 5/3-5038, and counties also keep a list of successful tax sale bidders, 35 ILCS 200/21-230, a registry of owners of certificates of purchase, *id.* § 21-251(a), and an optional index of properties sold at tax sales, *see id.* § 21-252. These tax sale records "should be inspected by and would give notice to a *bona fide* purchaser of property." *In re Application of County Collector*, 581 N.E.2d 367, 371 (Ill. App. Ct. 1991). So very conceivably, a purchaser who takes an interest in the debtor's property after the redemption period expires would have constructive notice of the taxbuyer's interest, precluding BFP status against the taxbuyer.

We have not found an Illinois case resolving whether such a post-redemption purchaser is incapable of taking an interest superior to the taxbuyer's, based on constructive notice of the tax sale proceedings. From our review of other cases involving tax deed disputes, we do not think that the purchaser would necessarily lose to the taxbuyer, for two reasons. First, whether a purchaser is charged with notice of a competing interest in tax-delinquent property depends on case-specific factors, including the records available to the purchaser, the diligence of the purchaser's title search, and the propriety of the underlying tax sale. *See County Collector*, 921 N.E.2d at 476-77 (tax deed grantee not a BFP where public records revealed deficiencies in notice in tax deed proceedings); *In re Application of Cook County Collector*, 593 N.E.2d 538, 550 (Ill. App. Ct. 1991) (tax deed grantee not a BFP due to evidence of competing ownership interest); *Novak v. Smith*, 554 N.E.2d 652, 656-57 (Ill. App. Ct. 1990) (purchaser not a BFP against taxbuyer because purchaser's own title abstract included tax sale documents); *Application of County Treasurer & Ex-Officio County Collector of Cook County*, 332 N.E.2d 557, 561 (Ill. App. Ct. 1975) (tax deed grantees not BFPs based on notice of owners' possession interest). So although we can imagine scenarios in which constructive notice of a taxbuyer's interest would preclude BFP status, it goes too far to assume as a matter of Illinois law that a purchaser can never prevail simply because the redemption period has expired.

Second, even if a purchaser had notice of the taxbuyer's post-redemption interest, the debtor still may hold a

"superior" interest conveyable to the purchaser. 11 U.S.C. § 548(d)(1). As illustrated by our review of the Property Tax Code, the debtor retains significant ownership rights after the expiration of the redemption period but before the issuance and recording of the tax deed. Although the expiration of the redemption period allows the taxbuyer to move forward with its tax deed petition, 35 ILCS 200/22-30, expiration does not by itself affect the parties' relative property rights. The status quo, with title and possession in the debtor, remains. In order to change that status quo by obtaining a tax deed, the taxbuyer must prove to an Illinois court that all of the tax sale procedural requirements have been observed. *See id*. § 22-40. At the hearing to prove compliance with these procedures, the debtor (or other interested party) may appear and object to the issuance of the tax deed. *See id.* § 22-30. What's more, if the taxbuyer fails to complete these steps and obtain and record a tax deed within a year after the redemption period expires, the taxbuyer's rights become "absolutely void." *Id.* § 22-85. So while it seems unlikely, the taxbuyer might never do anything after the redemption period expires, in which case the debtor unquestionably would retain superior property rights conveyable to a BFP. *Cf. First Nat'l Bank of Waukegan v. Kusper*, 456 N.E.2d 7, 9-10 (Ill. 1983) (although no redemption made, property owner's title was "secure and unimpaired" due to taxbuyer's failure to timely petition for a tax deed prior to expiration of redemption period).

These tax sale statutes and cases illustrate that, after the expiration of the redemption period but before the

issuance and recording of the tax deed, the debtor retains significant ownership rights while the taxbuyer acquires only a contingent right to a tax deed. It follows that in this gap period between redemption and recording, it is possible for a "bona fide purchaser" to acquire from the debtor a property interest "superior" to the taxbuyer's interest. 11 U.S.C. § 548(d)(1).

### III. Conclusion

Under the Illinois tax sale process, the taxbuyer's interest is "perfected" against a "bona fide purchaser" when the taxbuyer records a tax deed to the property. The recording of the tax deed to the Smith property occurred less than two years before the Smiths filed for bankruptcy, so they have sufficiently pleaded the two-year look-back element of their fraudulent transfer claim under 11 U.S.C. § 548. We REVERSE the judgment of the district court and REMAND with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.